IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02257-REB-KLM

DEAN CARBAJAL,

     Plaintiff,

v.

ST. ANTHONY CENTRAL HOSPITAL, a corporation,
CENTURA HEALTH, a corporation,
DR. CHUANG, Supervising Physician, in his official and individual capacities,
STEPHAN M. SWAN, Physician Assistant, in his official and individual capacities,
GREGORY J. ENGLUND, Registered Nurse, in his official and individual capacities,
MARCI L. HANSUE, Registered Nurse, in her official and individual capacities,
MICHAEL O'NEILL, Police Officer for the Denver Police Department, in his official and individual capacities,
JAY LOPEZ, Police Officer for the Denver Police Department, in his official and individual capacities,
LARRY BLACK, Police Officer for the Denver Police Department, in his official and individual capacities,
LIEUTENANT THOMAS, Lieutenant for the Denver Police Department, in his official and individual capacities,
CAPTAIN STEVEN CARTER, Captain for the Denver Police Department, in his official and individual capacities,
GILBERTO LUCIO, Police Officer for the Denver Police Department, in his official and individual capacities,
CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado, and
APEX, a corporation,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on the **Motion to Dismiss Amended Complaint**

[Docket No. 69; Filed December 17, 2012], filed by Defendants St. Anthony Central

Hospital ("St. Anthony"), Centura Health ("Centura"), Gregory J. Englund ("Englund"), and

Marci L. Hansue ("Hansue") (collectively, the "St. Anthony Defendants"); on the **Motion to Dismiss** [Docket No. 71; Filed December 18, 2012], filed by Defendants Dr. Ryan Chuang ("Chuang") and Stephen Swan, P.A. ("Swan"); on the **Motion to Dismiss Amended Prisoner Complaint** [Docket No. 73; Filed December 19, 2012], filed by Defendants Michael O'Neill ("O'Neill"), Jay Lopez ("Lopez"), Larry Black ("Black"), Lieutenant Ron Thomas ("Thomas"), Captain Steven Carter ("Carter"), Gilberto Lucio ("Lucio"), and the City and County of Denver (collectively, the "Denver Defendants"); and on the **Motion to Dismiss** [Docket No. 87; Filed January 29, 2013], filed by Defendant Apex.  Plaintiff filed Responses to the Motions on January 28, 2013 [#86] and on February 22, 2013 [#106]. Defendants filed Replies on February 15, 2013 [#102, #103, #104, #108].

The Motions have been referred to this Court for recommendation [#70, #72, #74, #87] pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3.  The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the St. Anthony Defendants' Motion [#69] be **GRANTED in part and DENIED in part**; that Defendants Chuang and Swan's Motion [#71] be **GRANTED in part and DENIED in part**; that the Denver Defendants' Motion [#73] be **GRANTED in part and DENIED in part**; and that Defendant Apex's Motion [#87] be **DENIED**.

**Table of Contents**

Section                                                                                    Page No.

I.     Summary of the Case                                                        5

II.    Standard of Review                                                           9

       A.     Fed. R. Civ. P. 12(b)(1)                                         9

       B.     Fed. R. Civ. P. 12(b)(6)                                        10

III.   Analysis                                                                       12

       A.     Declaratory Judgment                                          12

       B.     Defendants Swan and Chuang's Motion to Dismiss      16

              1.     Pleading Requirements of Rule 8                  16

                     a.     The Medical Defendants' Relationship      17

                     b.     Claim Three: Negligence                     18

                     c.     Claim Five: Invasion of Privacy           19

              2.     Defendant Swan                                        21

                     a.     Personal Participation                        21

                     b.     State Actor                                       24

                     c.     Negligence                                       29

                     d.     Outrageous Conduct                          30

              3.     Defendant Chuang                                     32

                     a.     Constitutional Claims                         32

                     b.     Negligence                                       37

                     c.     Outrageous Conduct                          40

|  |  | d. | Invasion of Privacy | 40 |

|  | 4. | Conclusion |  | 40 |

| C. | Defendants St. Anthony, Centura, Englund and Hansue's Motion to Dismiss |  |  | 41 |

|  | 1. | Pleading Requirements of Rule 8 |  | 41 |

|  | 2. | Outrageous Conduct |  | 41 |

|  | 3. | Defendants Englund and Hansue |  | 41 |

|  |  | a. | Personal Participation | 41 |

|  |  | b. | State Actors | 42 |

|  |  | c. | Negligence | 43 |

|  | 4. | Defendants St. Anthony and Centura |  | 44 |

|  |  | a. | Constitutional Claims | 44 |

|  |  |  | i. State Actors | 44 |

|  |  |  | ii. *Monell* | 45 |

|  |  | b. | Negligence | 49 |

|  | 5. | Conclusion |  | 50 |

| D. | Defendant Apex's Motion to Dismiss |  |  | 51 |

|  | 1. | Pleading Requirements of Rule 8 |  | 51 |

|  | 2. | Outrageous Conduct |  | 52 |

|  | 3. | Constitutional Claims |  | 52 |

|  |  | a. | State Actor | 52 |

|  |  | b. | *Monell* | 52 |

|  | 4. | Conclusion |  | 52 |

| E. | The Denver Defendants' Motion to Dismiss |  |  | 53 |

|  | 1. | Subject Matter Jurisdiction: CGIA | 53 |
|  | 2. | Personal Participation | 54 |
|  |  | a. Defendants Lucio, Black, O'Neill, and Lopez | 55 |
|  |  | b. Defendants Thomas and Carter | 57 |
|  | 3. | Qualified Immunity | 58 |
|  | 4. | *Monell* | 60 |
|  | 5. | Invasion of Privacy | 61 |
|  | 6. | Conclusion | 62 |
| IV. | Conclusion | | 64 |

## I.  Summary of the Case

Plaintiff is currently a state prisoner incarcerated at the Sterling Correctional Facility

in Sterling, Colorado.  According to the Amended Complaint, on August 28, 2010, prior to

his present term of incarceration, Plaintiff was assaulted by Defendants O'Neill, Lopez, and

Lucio, police officers with the Denver Police Department.  *Am. Compl.* [#60] at 5.  Plaintiff

states that he was left "unconscious in a puddle of blood with his face and body covered

in blood."  *Id.*  After the incident he was transported to a hospital[1] apparently owned and

run by Defendants St. Anthony and Centura, in Jefferson County, Colorado, and treated

in the emergency room.[2]  *Id.*  Plaintiff asserts that the police and paramedics attempted

to hide the officers' alleged physical abuse by taking Plaintiff to a hospital which was "clear

across town" when the closest and most practical available hospital was Denver Health.

___

[1]  It is not clear from the Amended Complaint whether Plaintiff was under arrest or merely involuntarily detained.  The distinction is irrelevant to the following analysis.

[2]  The extent of the necessary medical assistance is disputed by the parties, but it appears from Plaintiff's allegations that *some* degree of medical assistance was needed.

*Id.* Plaintiff avers that Defendant O'Neill and other involved officers falsified reports to cover their abuse by documenting that Plaintiff had, in fact, been taken to Denver Health. *Id.*

Plaintiff alleges that after his arrival at the hospital, he repeatedly asked to speak to someone with the hospital's "internal affairs department," but he was refused and instead subjected to numerous tests and procedures without his consent. *Id.* He avers that medical personnel worked as quickly as possible in order to cover up the officers' alleged assault. *Id.* He was allegedly strapped to a table, subjected to a CAT scan, and had his blood drawn. *Id.* Plaintiff was then transported to another room where he continued to ask to speak to internal affairs so he could report the alleged assault. *Id.* The medical personnel "cleared" Plaintiff and, immediately thereafter, an unidentified security officer and Defendant Black, another police officer from the Denver Police Department, "began forcefully cleaning the blood from [Plaintiff's] face without care, further injuring [him], [and] causing him great pain as they rubbed and reopened the gashes and tears in [his] face . . . ." *Id.* They allegedly told him, "[I]f you want to report this to internal affairs we are going to need a urine test." *Id.* Plaintiff asserts that the unidentified officer, Defendant Black, Defendant Englund (a registered nurse), and Defendant Swan (a physician's assistant) all agreed that a urine test was required before Plaintiff could speak to internal affairs. *Id.* at 5-6. Plaintiff asked to be left alone, refused further treatment, and again requested to speak to their supervisors and to internal affairs. *Id.* at 6. Because Plaintiff refused to voluntarily provide a urine sample, a number of officers, including Defendants Lopez, O'Neill, and Black, discussed a plan to forcefully catheterize Plaintiff. *Id.* Either Defendant Swan or Defendant Englund then told Plaintiff that if the officers wanted a urine test, they

could force Plaintiff to give a sample. *Id.* Plaintiff refused and again demanded to see their supervisors. *Id.* Either Defendant Englund or Swan "laughed" and told Plaintiff, "I am the supervisor, you need to give a urine sample if you want to speak to internal affairs." *Id.*

Plaintiff states that one of the officers then surprised Plaintiff by putting his hands on Plaintiff's throat and choking him, even though Plaintiff was still restrained to his bed. *Id.* Plaintiff struggled to breath and attempted to cover his genitals even though his hands were strapped to the side of the bed. *Id.* The other security officer, along with Defendants Englund, Swan, Black, and Hansue (another registered nurse), forced Plaintiff's hands away from his genitals, "began to crank" on Plaintiff's ankle to twist it outward, and beat him as he continued to be choked. *Id.* During this struggle, Plaintiff alleges, upon belief, that Defendant Black struck his testicles. *Id.* Plaintiff states that he then lost consciousness for a few seconds and, after regaining consciousness, lay on the table as Defendant Englund or Swan inserted a catheter into his urethra and extracted a urine sample. *Id.* A nurse then removed the catheter, "causing a tearing sensation and severe pain."[3] *Id.* The officer who had choked Plaintiff asked him, "How's it feel to get rapped [sic]?" and either Defendant Englund or Swan, while leaving, commented, "We'll see if he wants to talk to internal affairs now." *Id.* Plaintiff alleges that he did not again ask to speak to internal affairs "in fear that he would be attacked again," and that Defendant Black subsequently hid drugs in Plaintiff's shirt to further ensure that Plaintiff would not report the incident. *Id.* at 8.

This procedure is alleged to have occurred while Plaintiff was "exposed to the public" and "non-medical personnel." *Id.* at 6. Plaintiff alleges that he continued to experience

---

[3] Defendants St. Anthony, Centura, Englund, and Hansue concede that "catheterization is not painless under the best of circumstances" and that the procedure is "inevitably painful." *Motion* [#69] at 14.

severe pain and bloody discharge for two months, and as a result of the failure to sanitize Plaintiff's genitals before the procedure, he contracted an infection that lasted a year and a half until finally treated with antibiotics. *Id.* at 17. He alleges injuries that include but are not limited to "physical injuries to legs, testicles, neck, and internal body; serious pain, mental anguish, anxiety, embarrassment, depression, and loss of enjoyment of life." *Id.* at 7.

According to Plaintiff, prior to his forced catheterization, Defendant Carter (a captain with the Denver Police Department), Defendant Thomas (a lieutenant with the Denver Police Department), and Defendant Chuang (a supervisory physician at St. Anthony's) were made aware of the circumstances leading to Plaintiff's hospitalization, yet each "personally allowed and compelled" the catheterization. *Id.* at 8. He further avers that "the City and County of Denver, Denver Police Department, and St. Anthony's Hospital knew that their personnel had and would continue to encounter situations where reports of official misconduct were made, and situations where a warrant is needed to get bodily fluids" from a suspect, but that no written regulations ensured personnel compliance with "constitutional and statutory requisites." *Id.* at 11. Plaintiff alleges that this lack of regulation and proper training of personnel caused his treatment at the hands of Defendants. *Id.* at 11, 13. Plaintiff further avers that he "remain[s] at risk of being sexually assaulted and forcefully catheterized" as a result of these policies and practices. *Id.* at 11.

In connection with these underlying events, Plaintiff asserts seven causes of action: (1) unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments against all Defendants; (2) unreasonable and excessive force in violation of the Fourth and Fourteenth Amendments against all Defendants; (3) negligence against Defendants Swan,

Englund, Hansue, Chuang, St. Anthony, and Centura; (4) retaliation in violation of the First and Fourteenth Amendments against all Defendants; (5) invasion of privacy against all Defendants;[4] (6) extreme and outrageous conduct against Defendants St. Anthony, Centura, Apex, Chuang, Swan, Englund, Hansue, Carter, Thomas, Black, Lucio, Lopez, and O'Neill; and (7) conspiracy to violate Plaintiff's civil rights in violation of the First, Fourth, and Fourteenth Amendments against all Defendants. *Id.* at 13-23. As remedies, Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* at 25. Defendants move to dismiss Plaintiff's Amended Complaint on the basis of Fed. R. Civ. P. 8(a), 12(b)(1), and 12(b)(6). *Motions* [#69, #71, #73, #87]. The Court addresses the specifics of Defendants' arguments regarding dismissal in the Analysis section below.

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal

_____

[4] The Court discusses the legal basis for this cause of action in detail in Section III.B.1.a. below.

Rules of Civil Procedure.  *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.**     **Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).  As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010).  Rule 8 enables

"the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, a *pro se* litigant must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

Plaintiff's Amended Complaint boils down to the following material factual scenario. Plaintiff and law enforcement personnel had a public altercation which resulted in law enforcement personnel detaining Plaintiff. The law enforcement personnel then transported Plaintiff to a private hospital for diagnosis and treatment of Plaintiff's ailments. Private medical personnel proceeded to treat Plaintiff without his consent, despite Plaintiff's requests to speak with other hospital staff first to report the law enforcement personnel's conduct. In this lawsuit, Plaintiff brings constitutional claims of unreasonable search and seizure, excessive force, retaliation, and conspiracy, along with state law claims of negligence, invasion of privacy, and extreme and outrageous conduct.

### A.    Declaratory Judgment

Defendants do not raise all applicable subject matter jurisdiction arguments in the Motions. However, the Court must consider jurisdiction *sua sponte* when it comes to the Court's attention that it may lack jurisdiction over a matter. *McAlester v. United Air Lines,*

*Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009). Accordingly, the Court first considers whether it has subject matter jurisdiction over each of Plaintiff's claims. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-00050, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998). The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1) with respect to Plaintiff's requests for declaratory judgment. *See, e.g., Van Deelen v. Fairchild*, No. 05-2017, 2005 WL 3263885, at *7 (D . Kan. Dec. 1, 2005).

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (citations omitted). In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief

that, if granted, would affect the behavior of the particular parties listed in his complaint."
*Id.*

To establish that a case or controversy exists, Plaintiff must demonstrate that the controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In short, "[t]he ultimate question is whether declaratory relief will have some effect in the real world." *Van Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment[.]" *Id.* (citing *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

Plaintiff seeks a declaration that "[t]he Defendants' reckless and intentional acts and/or omissions violated Mr. Carbajal's First, Fourth, and Fourteenth Amendment rights by torturously forcefully catheterizing him." *Am Compl.* [#60] ¶ 30.3. The mere fact that Plaintiff's requested relief would give Plaintiff the satisfaction that he was wronged in the past does not create an actual, live controversy. *Van Deelen*, 2005 WL 3263885, at *7 (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)). However, even if the Court were to grant his request, the declaratory judgment would not "affect[] the behavior of [D]efendant[s] toward [P]laintiff," because Defendants would not be required to take any course of action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). Plaintiff is seeking a retrospective opinion that these Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment.

*See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

> Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen*, 2005 WL 3263885, at *8.  Thus, Plaintiff's first claim for declaratory relief must be rejected.

Plaintiff also seeks:

> [a] declaration that Denver Police Department and St. Anthony's/Centura/ Apex had and have an inadequate and deficient training and supervision program that allows citizens to be subjected to retaliation or forced catheterization without probable cause, that has subjected Mr. Carbajal to a deprivation of his civil rights, *and that still poses an extreme risk to Mr. Carbajal and citizens in Colorado that come into contact with their personnel.*

Am Compl. [#60] at 25 (emphasis added).  This claim for relief goes above and beyond a mere declaration of the meaning of a regulation or practice and essentially seeks a specific change in policy implementation by the Denver Police Department and Defendants St. Anthony's, Centura, and Apex.  The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  The Court construes this claim as a claim for injunctive relief, and

therefore the DJA does not apply.  *Am. Compl.* [#60] at 25.  Instead, because Plaintiff also explicitly requests that the Court issue injunctive relief, the Court will incorporate any future analysis of Plaintiff's misstated request for a declaration into its analysis of Plaintiff's request for injunction.[5]

Accordingly, the Court respectfully **recommends** that Plaintiff's requests for declaratory relief against all Defendants be **dismissed without prejudice** for lack of subject matter jurisdiction.[6]  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B.    Defendants Chuang and Swan's Motion to Dismiss**

In support of their Motion to Dismiss [#71], Defendants Chuang and Swan argue that Plaintiff's Amended Complaint: (1) fails to substantiate conclusory allegations that Defendants Chuang and Swan are state actors; (2) fails to state a claim for relief against them for alleged liability in their individual or official capacities; (3) fails to state a claim for negligence; (4) fails to state a claim against Defendant Chuang as a supervisor; (5) fails to state an independent and actionable outrageous conduct claim; and (6) fails to comply with the requirements of Rule 8(a).  The Court addresses the final argument first.

**1.    Pleading Requirements of Rule 8**

"A dismissal without prejudice under Rule 8 is within the sound discretion of the trial court."  *Carbajal v. City & Cnty. of Denver*, 502 F. App'x 715, 716 (10th Cir. 2012) (quoting

---

[5]  The Court does not separately address Plaintiff's request for injunctive relief in this Recommendation.

[6]  The Court discusses all other subject matter jurisdiction arguments in the context of the individual Motions below.

*Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992)).  "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."  *Carbajal*, 502 F. App'x at 716 (quoting *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)).  Rule 8 requires "a short and plain statement of the claim"—"plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted," and "short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it."  *Carbajal*, 502 F. App'x at 716 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  When a complaint fails to comply with these requirements, it is "not the district court's job to stitch together cognizable claims for relief from [a] wholly deficient pleading."  *Carbajal*, 502 F. App'x at 716 (quoting *Mann*, 477 F.3d at 1148).

Here, while Plaintiff's Amended Complaint is somewhat verbose and lengthy, the Court finds that it is not so vague and confusing as to violate Rule 8(a).  Plaintiff has plainly identified the defendants in this matter, has made factual allegations against them (albeit replete with numerous conclusory statements), has clearly stated the causes of action he brings, and has requested relief certain.  However, three issues regarding Plaintiff's characterization of his legal claims deserve mention here.

### a.    The Medical Defendants' Relationship

First, the Court observes that there is some confusion within Plaintiff's Amended Complaint regarding the relationships among the medical defendants, *i.e.*, Defendants Hansue, Englund, Chuang, Swan, St. Anthony, Centura, and Apex.  Plaintiff appears to allege that Defendants St. Anthony, Centura, and Apex are all entities that employ Defendant Chuang as a supervisor, and that Defendant Chuang supervises Defendants

Swan, Englund, and Hansue. *See Am. Compl.* [#60] at 3.  In its Motion, Defendant Apex asserts that it is an unrelated entity to Defendants St. Anthony and Centura. *Motion* [#87] at 3, 8.  Defendants Chuang and Swan assert that they are not employees of Defendants St. Anthony and Centura. *Motion* [#71] at 5.  The St. Anthony Defendants also assert that Defendants Chuang and Swan were not hospital employees. *Motion* [#69] at 8 n.2.

Taken as a whole, it appears from the pleadings that Defendant Chuang is a supervisor of Defendant Swan and that both are employees of Defendant Apex.  It further appears that Defendant Hansue and Defendant Englund are both employees of Defendants St. Anthony and Centura.  Regardless, it is clear from the Amended Complaint that Defendants Swan, Englund, and Hansue were allegedly present when Plaintiff was brought to the hospital by law enforcement personnel and participated in the ensuing events; that Defendant Chuang was a supervisor over at least Defendant Swan and was not physically present at any of the events underlying this lawsuit; and that Defendants St. Anthony, Centura, and/or Apex employed each of the individual medical defendants.  At this stage of the litigation, the Court's analysis of the medical defendants' Motions is not dependent on factual conclusions regarding their employment relationships and job duties.

### b.    Claim Three: Negligence

Second, when reviewing the Amended Complaint, the Court "wonders if [Plaintiff] in [his] own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick." *Indep. Towers of Wash.*, 350 F.3d at 929.  For example, Plaintiff asserts the following alleged acts of negligence against Defendants Swan, Chuang, Englund, Hansue, St. Anthony's, Centura, and other unnamed/unidentified personnel, collectively: (1) failure to inform Plaintiff about proposed treatment and his rights with respect to choosing his course of treatment; (2) failure to

respect Plaintiff's refusal of medical treatment; (3) failure to comply with federal and state laws regarding non-consensual blood and urine draws requested by police; (4) failure to maintain Plaintiff's private information and treatment in confidentiality; (5) failure to properly investigate the circumstances surrounding Plaintiff's condition and treatment by relying on police statements in determining course of action; and (6) medical malpractice in at least four ways.[7]  *Am. Compl.* [#60] at 16-17.

"Plaintiff would have been much more effective if [he] had forgone [his] spaghetti-against-the-wall approach in favor of more selective, better developed arguments." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008).  As previously noted, the Court is not rigidly constrained by Plaintiff's conclusory legal labels.  *See Castro*, 540 U.S. at 381.  The Court therefore addresses Plaintiff's negligence claims in the analysis below in such a way as to as "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis" against each of the medical Defendants.

### c.    Claim Five: Invasion of Privacy

Third, Plaintiff's Claim Five requires examination.  Plaintiff states that the claim is for invasion of privacy under the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 *and* under article II, section 7 of the Colorado Constitution pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).  *Am. Compl.* [#60] at 20.  The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado constitution both proscribe all unreasonable searches and seizures.  *People v. Glick*, 250 P.3d 578, 583 (Colo. 2011).  Unlike Defendants, the Court does not immediately assume

---

[7]  Plaintiff also alleges a wide variety of additional negligence on the part of the supervisor and entity defendants.  *See Am. Compl.* [#60] at 17.

that Plaintiff's "invasion of privacy" statement means that he is actually intending to bring a state common law tort claim.  In fact, in his Response, Plaintiff strenuously argues that Claim Five is a constitutional tort claim.  *Response* [#86] at 29.

After considering the allegations of the Amended Complaint and the deficient legal arguments by Defendants, the Court cannot definitively hold that Plaintiff's Claim One, based on unreasonable search and seizure, and Claim Five, based on invasion of privacy, are not distinct Fourth Amendment claims.  Plaintiff describes the difference between the claims as follows:

> Claim One seeks relief for the extraction of bodily fluids without probable cause and in an excessive and unreasonable manner as a requirement to file or present a complaint to internal affairs.  In contrast, Claim Five for invasion of privacy is actionable for the intentional exposure of [Plaintiff's] privates to the public and unauthorized disclosure of private medical information to the public as well as the invasion of his bodily integrity by forcefully catheterizing him and recklessly exposing his body in the nude.

*Response* [#86] at 29.  In short, Plaintiff alleges that Defendants removed his hands from over his genitals in order to catheterize him while multiple people stood by and were able to view him.[8]  Without adequate briefing from the parties on the issue, the Court finds that these alleged events *may* encompass two separate claims for violation of the Fourth Amendment of the United States Constitution.

Plaintiff also explicitly states that Claim Five violates the Colorado Constitution's proscription against unreasonable searches and seizures.  *Am. Compl.* [#60] at 20.  The Colorado Constitution protects "any governmental action intruding upon an activity or area in which one holds . . . [a legitimate] expectation of privacy," *i.e.*, a "search."  *People v.*

_____

[8]  The Court recognizes the inconsistency of Plaintiff's allegations that Defendants placed restraints on his hands such that they were pinned to the bed yet also pulled Plaintiff's hands away from covering his genitals.  However, due to Plaintiff's *pro se* status, the Court nevertheless accepts these allegations for purposes of this Recommendation and expects that the allegations will be further illuminated during discovery.

*Oates*, 698 P.2d 811, 814 (Colo. 1985).   The legitimacy of a privacy expectation is determined by "whether one actually expects that the area or activity subjected to governmental intrusion would remain free of such intrusion, and whether that expectation is one that society is prepared to recognize as reasonable." *Id.* (internal quotation omitted). Importantly, although the Fourth Amendment of the United States Constitution employs the same test, Colorado courts have used article II, section 7 of the Colorado Constitution to protect a broader spectrum of privacy interests than its federal counterpart.  *Id.* at 815-16. The Court therefore finds that Plaintiff's Claim Five also survives as a separate cause of action from Claim One in that Claim Five seeks relief via article II, section 7 of the Colorado Constitution.

With these clarifications, the Court finds that Plaintiff Amended Complaint meets the requirements of Rule 8(a), and **recommends** that Defendants Chuang and Swan's motion to dismiss on that basis be **denied**.

### 2.    Defendant Swan

#### a.    Personal Participation

Individual liability pursuant to Section 1983 "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1425, (10th Cir.1997); (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the described violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

Here, despite Defendant Swan's conclusory assertions to the contrary, Plaintiff has

alleged Defendant Swan's personal involvement in the events underlying this lawsuit. Plaintiff states that Defendant Swan agreed with Defendant Englund and the law enforcement personnel present that a urine test was required before Plaintiff could speak with anyone from the hospital's "internal affairs department." *Am. Compl.* [#60] at 5-6. Defendants Swan, Englund, and the law enforcement personnel allegedly discussed this plan "loud enough to scare and intimidate" Plaintiff. *Id.* at 6. Defendant Swan or Englund[9] responded that, "If the officers want a urine test, we can force you." *Id.* In response to Plaintiff's repeated request to speak with someone from the hospital's internal affairs department, Defendant Swan or Englund laughed and stated, "I am the supervisor, you need to give a urine sample if you want to speak to internal affairs." *Id.* Defendant Swan, with others, allegedly "stripped [Plaintiff's] hands away [from his genitals], twisted Plaintiff's ankle outward, beat him, confined him, and choked him." *Id.* Defendant Swan or Englund then "forcefully pulled [Plaintiff's] penis, causing a tearing pain" before one of them inserted the catheterization tube. *Id.* One of them "forced this tube in a jamming motion," which caused "an excruciating surge of pain." *Id.* After removing the tube in such a way as to elicit great pain, Defendant Swan or Englund stated while leaving the area, "We'll see if he wants to talk to internal affairs now." *Id.* These statements are sufficient to demonstrate Defendant Swan's presence and involvement in the events underlying this action.

However, other than stating conclusorily that "Plaintiff has failed to state any specific allegations that the Defendants allegedly violated Plaintiff's rights," Defendant Swan provides no analysis of Plaintiff's specifically asserted constitutional violations based on the alleged actions taken by Defendant Swan against him on August 28, 2010. *Motion* [#71]

---

[9]   There are a number of allegations which reflect Plaintiff's uncertainty as to whether Defendant Swan or Defendant Englund, both of whom were present, performed an act or made a statement.  Discovery will likely clarify the extent of involvement by each of these individuals.

at 7.   Defendant Swan argues that "[i]t is Plaintiff's burden to show that . . . [Defendant] Swan [was] personally involved in the alleged constitutional violation."   *Reply* [#103] at 5. This is true.   *See Stidham*, 265 F.3d at 1156.   However, it is not the Court's responsibility to *sua sponte* construct arguments in support of Defendant Swan's Motion to Dismiss. *See, e.g.*, *Continental Materials Corp. v. Affiliated FM Ins. Co.*, No. 10-cv-02900-JLK-KLM, 2012 WL 4442743, at *7 (D. Colo. Sept. 26, 2012) (stating that it is not the responsibility of the Court to flesh out the defendant's contention of hearsay where the defendant "failed to provide any argument or direct the Court's attention to any specific portion of the record"); *Million v. Frank*, 47 F.3d 385, 388 (10th Cir. 1995) (stating that a litigant "should be required to assume some minimum responsibility . . . for an orderly and expeditious resolution of [the] dispute"); *Ankeney v. Creany*, No. 09-cv-02085-WJM-MJW, 2011 WL 7094380, at *3 (D. Colo. June 30, 2011) (stating that it was the party's responsibility, not the Court's, to obtain and present support for his argument); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2011 WL 940803, at *3 (D. Colo. Mar. 16, 2011) (stating that "the Court will not take on the responsibility of serving as the [litigant's] attorney, such as constructing arguments and searching the record for evidence in support of the [litigant's] contentions" (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005))); *Ajaj v. Fed. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *2 (D. Colo. Mar. 10, 2011) (same); *accord Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) (stating that the court cannot "manufacture arguments" for a litigant, that claims not actually argued in the briefs will not be considered, and that the court "review[s] only issues which are argued specifically and distinctly in a party's . . . brief"); *D.A.R.E. Am. v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001) (stating that "bare assertion of an issue does not preserve a claim").

To the extent that Defendant Swan is attempting to obtain dismissal of Plaintiff's claims against him because of Plaintiff's uncertainty about whether Defendant Swan or Defendant Englund or both were the alleged bad actors, Defendant's argument lacks merit. The uncertainty expressed in the Amended Complaint may be clarified through discovery. Plaintiff's alternate allegations are not disallowed, nor do they subject his claims to dismissal under Rule 12(b)(6).  *See Lawser v. Poudre Sch. Dist. R-1*, 171 F. Supp. 2d 1155, 1158 (D. Colo. 2001).

"Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).   The Court finds both that Plaintiff has alleged Defendant Swan's personal involvement in the events of August 28, 2010, and that Defendant has failed to appropriately argue that Plaintiff's allegations of personal involvement are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that Defendant Swan's motion to dismiss on this based be **denied**.

### b.    State Actor

The Court next examines Defendant Swan's argument regarding whether he was acting under color of state law.  Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).   "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful."  *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted).   Thus, the only proper defendants in a Section 1983 action are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172 (1961); *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1441, 1447 (10th Cir.1995).

Four tests are used to determine whether a private individual or entity may be found to be acting under color of state law and, therefore, may be liable pursuant to Section 1983. *See Gallagher*, 49 F.3d at 1447.   In short, these tests are the nexus test, the symbiotic-relationship test, the joint-activity test, and the public-functions test. *See id.*   The nexus tests requires the Court to consider "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).   The symbiotic-relationship test asks whether the state and the private party have "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship has formed. *Id.* (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972); quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).   The joint-activity test inquires whether the private party is "a willful participant in joint activity with the State or its agents." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).   The public-function test determines whether the private entity has exercised "powers traditionally reserved to the State." *Id.* (quoting *Jackson*, 419 U.S. at 352).   In short, pursuant to each test, a plaintiff must show that "the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'"   *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935

(1982)).

The allegations in Plaintiff's Amended Complaint fall far short of meeting the requirements of the nexus test, the symbiotic-relationship test, or the public-function test. Plaintiff has not alleged that "there is a sufficiently close nexus between the State and the challenged action of [the medical defendants] so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U .S. at 351. Nor has Plaintiff alleged that the State and the medical defendants "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship formed. *Moose Lodge No. 107*, 407 U.S. at 175; *Burton*, 365 U.S. at 725. Finally, Plaintiff fails to allege that the medical defendants exercised "powers traditionally reserved to the State." *Jackson*, 419 U.S. at 352. The Third Circuit has noted that "the traditionally exclusive public function requirement is a rigorous standard that is rarely . . . satisfied." *Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005).

To the contrary, however, Plaintiff has provided allegations that Defendant Swan was a "willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 152. In *Adickes v. S.H. Kress & Co.*, the United States Supreme Court held that, "[a]lthough this is a lawsuit against a private party, not the State or one of its officials, our cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg politician somehow reached an understanding to deny Miss Adickes service in The Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes." *Id.* The Supreme Court further held that "[t]he involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially

authorized, or lawful." *Id.*

The Tenth Circuit Court of Appeals has held that the joint-action test may be satisfied by determining that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Wittner v. Banner Health*, ___ F.3d ___, ___, Nos. 11-1171, 11-1180, 2013 WL 3156631, at *7 (10th Cir. June 24, 2013) (quoting *Gallagher*, 49 F.3d at 1453). In *Wittner v. Banner Health*, the patient-plaintiff was brought by police to a private hospital for a mental health evaluation after he made threats against his former employer. *Wittner*, 2013 WL 3156631, at *1. At the hospital, the patient-plaintiff began acting aggressively and was consequently restrained and injected with medication by medical personnel. *Id.* He later brought suit against the medical personnel pursuant to Section 1983. *Id.* Like the present case, the *Wittner* plaintiff conceded that the hospital was a private hospital and that the individual medical defendants were privately-employed medical professionals. *Id.* at *3. Unlike the present case, in *Wittner*, "[n]otably, plaintiffs did not name the police officer [and/or] the police department . . . as defendants." *Id.* (emphasis added). The *Wittner* court held that the plaintiffs' theory regarding joint action failed because the plaintiffs "have not alleged that any state officials conspired with or acted jointly in making the decision to medicate" the patient-plaintiff. *Id.* at *7. The court observed that "plaintiffs' theory of state action seems to be one of acquiescence – that by allowing [the hospital] to hold [the patient-plaintiff], the state should be held responsible for [a hospital] doctor's decision to medicate him." *Id.* However, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)). The court therefore determined that the joint action test was not satisfied based on the alleged facts.

The underlying facts of the present case are similar to the extent that state law

enforcement personnel brought Plaintiff to a private hospital with private medical personnel, that Plaintiff was restrained, and that Plaintiff was administered medical care against his will.  However, unlike in *Wittner*, Plaintiff has alleged that state law enforcement personnel conspired with and acted jointly in making the decision to subject Plaintiff to medical tests and to administer medical care.  Specifically, Plaintiff has alleged that law enforcement personnel instigated, discussed, and agreed with Defendant Swan and other medical personnel to take a sample of Plaintiff's urine without his consent, to effect force against Plaintiff to obtain this sample, and to prevent Plaintiff from reporting asserted law enforcement misconduct until a urine sample was obtained.  *See Am. Compl.* [#60] at 5-6; *see Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State.").  Thus, despite Defendant Swan's conclusory assertions to the contrary, Plaintiff has alleged that Defendant Swan participated in joint activity with state law enforcement personnel during the events underlying this lawsuit.

Unfortunately, Defendant Swan's general assertion that there has been no constitutional violation to support joint-action liability is made without legal support.  *Motion* [#71] at 5-6.  It is not the Court's responsibility either to *sua sponte* raise or construct arguments in support of Defendant Swan's Motion to Dismiss.  *See supra* § III.B.2.a.i.  The Court finds both that Plaintiff has alleged Defendant Swan's joint activity with state law enforcement personnel on August 28, 2010, and that Defendant has failed to appropriately argue that Plaintiff's allegations are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that Defendant Swan's motion to dismiss on

this basis be **denied**.

### c.    Negligence

The vast majority of Plaintiff's statements regarding Dr. Swan's negligence are purely conclusory statements of law that Plaintiff asserts against all of the medical personnel and entities.  *See Am. Compl.* [#60] at 16-17.

The Colorado Court of Appeals recently addressed the issue of negligence claims against medical personnel in the context of a hospital emergency-room setting.  *See Settle v. Basinger*, __ P.3d __, 2013 WL 781110 (Colo. App. Feb. 28, 2013).  To establish a claim for negligence by medical personnel, a plaintiff must allege the same elements as for any other negligence claim, *i.e.*, that the defendant owed a legal duty to the plaintiff, that the defendant breached that duty, and that the breach of duty caused the harm that resulted in the alleged damages.  *Id.* at *7 (citing *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 929 (Colo. 1997)).

Defendant Swan lists, but does not argue, the elements of a negligence claim.[10] Rather, he simply states that "Plaintiff's [conclusory] allegations are not assertions of fact." *Motion* [#71] at 7-8.   The Court has discussed above many of the non-conclusory allegations Plaintiff makes in his Amended Complaint against Defendant Swan.  *See* § III.B.2.a.  Without briefing on the issue from Defendant Swan, the Court concludes, solely for the purposes of this Motion, that Defendant Swan, as a medical professional, owed a duty of care to Plaintiff.  *See Settle*, 2013 WL 781110, at *7.  The Court further finds it plausible pursuant to *Iqbal* that the catheterization *may* have been negligently performed

---

[10]  Defendant Swan's citation to *Perkins v. Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) is inapposite to the Court's determination of Plaintiff's state law negligence claim, as *Perkins* merely discusses whether medical negligence may rise to the level of a constitutional violation.  *See Motion* [#71] at 8.

if, as Plaintiff alleges, he discharged blood for a week after the procedure, he suffered extreme pain when he urinated for two months after the procedure, and he developed an infection causing puss to discharge for a year and a half after the procedure, until he received antibiotics for its treatment.  *See Am. Compl.* [#60] at 6.

Accordingly, the Court **recommends** that Defendant Swan's motion to dismiss on this basis be **denied**.

### d.    Outrageous Conduct

To state a claim for outrageous conduct under Colorado law, a plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) the conduct did indeed cause the plaintiff severe emotional distress.  *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068-69 (D. Colo. 2009) (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)).  A defendant's conduct is outrageous if it is "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCrary v. Aurora Pub. Sch.*, 57 F. App'x 362, 374 (10th Cir. 2003) (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)).  Moreover, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he [or she] has actual or apparent authority over the other, or the power to affect the other's interests." *Pearson v. Kancilia*, 70 P.3d 594, 598 (Colo. App. 2003) (citation omitted).  Whether the alleged conduct is sufficiently outrageous is, at least initially, a question of law for the court. *Green*, 155 P.3d at 385.  Outrageous conduct claims are also known as claims for intentional infliction of emotional distress.  *Llewellyn*, 622 F. Supp. 2d at 1068.

Defendant Swan cites to a line of cases indicating that an outrageous conduct claim

-30-

"consists of discrete elements established in law to prevent the intentional infliction of mental suffering." *Goodwin v. Student Movers, Inc.*, No. 11-cv-02486-WYD-KLM, 2012 WL 1090427, at *3 (D. Colo. Apr. 2, 2012) (quoting *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994)).   The tort "contemplates an extreme level of independently ascertainable misconduct from which the ineluctable conclusion is the calculated or reckless infliction of severe mental suffering."  *Goodwin*, 2012 WL 1090427, at *3 (quoting *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp.  31, 33 (D. Colo. 1997) (internal quotation omitted)).  "It is not meant to be an incantation to augment damages." *Goodwin*, 2012 WL 1090427, at *3 (quoting *Gard*, 859 F. Supp. at 1354).  Therefore, "where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for [other claims in the complaint], and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)."  *Goodwin*, 2012 WL 1090427, at *3 (quoting *Visor*, 965 F.Supp. at 33; citing *Emerson v. Wembley USA Inc.*, 433 F. Supp. 2d 1200, 1228 (D. Colo. 2006); *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000)).

The cases cited by Defendant Swan, as well as others reviewed by the Court, pertain to disputes regarding employment and/or discrimination.  *See, e.g.*, *Ayon v. Kent Denver Sch.*, No. 12-cv-02546-WJM-CBS, 2013 WL 1786978, at *4-5 (D. Colo. Apr. 26, 2013)(holding "the case law is clear in that an [outrageous conduct] claim must be distinct from a Plaintiff's employment claim"); *Scavetta v. King Soopers, Inc.*, No. 10-cv-02986, 2013 WL 316019, at *8-9 (D. Colo. Jan. 28, 2013); *Underwood v. GEO Grp., Inc.*, No. 10-cv-00306-LTB-KLM, 2011 WL 5593150, at *16 (D. Colo. Nov. 17, 2011); *Hein v. AT&T Operations, Inc.*, No. 09-cv-00291-WYD-CBS, 2010 WL 5313526, at *6-7 (D. Colo. Dec. 17, 2010); *Kashawney v. Xcel Energy Servs., Inc.*, No. 08-CV-02635-WYD-MJW, at *2-3

(D. Colo. Mar. 17, 2010).  The Court has found no case outside of the employment context which requires a distinct factual basis for an outrageous conduct claim.  Accordingly, at this early stage of the litigation the Court declines to adopt Defendant Swan's argument that Plaintiff's claim for outrageous conduct should be dismissed because the factual allegations underlying the claim are not distinct from the factual allegations underlying Plaintiff's other claims.

Plaintiff supports his claim for outrageous conduct by stating that Defendant Swan's actions were conducted to "cause [Plaintiff] serious emotional distress in an ill attempt to prevent him from speaking to internal affairs, by sexually assaulting him and torturing him by forcefully catheterizing him in a grossly abusive manner, as [he] recklessly and abusively grabbed his penis, punched him in the testicles, and choked him until he lost consciousness, followed by the jamming of the catheter down [Plaintiff's] urethra in a forceful and inhumane manner." *Am. Compl.* [#60] at 22.  Plaintiff also states that these actions were intended to "break his spirit," and that thereafter he suffered "severe emotional trauma." *Id.*  The Court finds that these allegations are sufficient to state a claim for outrageous conduct. *See Llewellyn*, 622 F. Supp. 2d at 1068-69.  Therefore, the Court **recommends** that Defendant Swan's motion to dismiss Plaintiff's outrageous conduct claim be **denied**.

### 3.    Defendant Chuang

#### a.    Constitutional Claims

Plaintiff brings constitutional claims against Defendant Chuang for violation of the Fourth Amendment based on taking Plaintiff's urine sample by catheterization and forcibly restraining him during the catheterization, First Amendment retaliation for taking the urine sample before Plaintiff could speak with the hospital's internal affairs department, and

conspiring to deprive Plaintiff of his First, Fourth, and Fourteenth Amendment constitutional rights by taking the above alleged actions.

Defendant Chuang was Defendant Swan's supervisor, which Defendants concede, and allegedly Defendants Englund and Hansue's supervisor, according to the Amended Complaint. The Tenth Circuit Court of Appeals recently reiterated the standard for Section 1983 supervisory liability in *Schneider v. City of Grand Junction Police Dep't*, __ F.3d __, Nos. 12-1086, 12-1115, 2013 WL 2421071, at *5-7 (10th Cir. June 5, 2013). The Court of Appeals first noted that the term "supervisory liability" is somewhat of a misnomer, as it may imply vicarious liability. *Id.* at *5 (citing *Iqbal*, 556 U.S. at 677; *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). However, "Section 1983 does not authorize liability under a theory of respondeat superior." *Schneider*, 2013 WL 2421071, at *5 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Schneider*, 2013 WL 2421071, at *5 (quoting *Iqbal*, 556 U.S. at 677).

Accordingly, a plaintiff must demonstrate an "affirmative link" between the supervisor and the alleged constitutional violation. *Schneider*, 2013 WL 2421071, at *5 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). The affirmative link requires more than "a supervisor's mere knowledge of his subordinate's" conduct. *Schneider*, 2013 WL 2421071, at *5 (quoting *Iqbal*, 556 U.S. at 677). Three elements are required to establish a Section 1983 claim against a defendant based on that defendant's supervisory responsibilities: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind. *Schneider*, 2013 WL 2421071, at *5 (citing *Dodds*, 614 F.3d at 1195).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Schneider*, 2013 WL 2421071, at *5 (quoting *Foote*, 118

-33-

F.3d at 1423).  Prior to *Ashcroft v. Iqbal*, 556 U.S. 662, the Court permitted a plaintiff to show this element by, for example, "demonstrating [a defendant's] personal participation, his exercise of control or direction, or his failure to supervise."  *Schneider*, 2013 WL 2421071, at *5 (quoting *Dodds*, 614 F.3d at 1195). "A defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights also could have constituted sufficient personal involvement."  *Id.  Iqbal*, though, "articulated a stricter liability standard for this first element of personal involvement." *Schneider*, 2013 WL 2421071, at *5.  The United States Supreme Court  held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* (quoting *Iqbal*, 556 U.S. at 676.  The Tenth Circuit in *Schneider* listed a number of post-*Iqbal* cases discussing allegations of personal involvement that meet the stricter liability of standard of *Iqbal*, but noted that the precise parameters of this new standard have yet to be determined in this Circuit.  *Schneider*, 2013 WL 2421071, at *5-6 (citing *Wilson v. Montano*, __ F.3d __, 2013 WL 1848138, at *6-8 (10th Cir. May 3, 2013); *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013); *Brown*, 662 F.3d at 1164-66; *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Dodds*, 614 F.3d at 1198-1201).

Regarding causation, *Iqbal* did not alter "the Supreme Court's previously enunciated § 1983 causation . . . analysis."  *Schneider*, 2013 WL 2421071, at *6 (quoting *Dodds*, 614 F.3d at 1200).  "A plaintiff [must] establish the requisite causal connection by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Schneider*, 2013 WL 2421071, at *6 (quoting *Dodds*, 614 F.3d at 1185 (internal quotations

omitted); citing *Starr v. Baca*, 652 F.3d 1202, 1218 (9th Cir. 2011) ("The requisite causal connection can be established [ ] by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.")).

Finally, the state of mind required for individual liability varies depending on the type of claim brought by the plaintiff. *Schneider*, 2013 WL 2421071, at *6 (citing *Iqbal*, 556 U.S. at 676; *Dodds*, 614 F.3d at 1204-05). In *Schneider*, the Tenth Circuit assumed, without deciding, that a deliberate indifference standard applies to a substantive due process bodily-integrity claim. *Schneider*, 2013 WL 2421071, at *6-7. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Schneider*, 2013 WL 2421071, at *7 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). This standard may be met by sufficiently alleging that the defendant "knowingly created a substantial risk of constitutional injury." *Schneider*, 2013 WL 2421071, at *7 (quoting *Dodds*, 614 F.3d at 1206). "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir.1997)).

Here, there are no allegations either that Defendant Chuang personally participated in the taking of Plaintiff's urine sample or that he was present at the time of this event. Based on the allegations of the Amended Complaint, the Court assumes that Plaintiff's theory of liability with regard to Defendant Chuang rests solely on his alleged role as a supervisor over Defendant Swan and Defendants Englund and Hansue. Courts have explained that a defendant in a supervisory position may be personally involved in an

alleged constitutional violation committed by his subordinates in one situation, *i.e.*, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Previously, supervisor liability could also arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission. *Id.* (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3rd Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")). However, the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by the subordinates may, on its own, no longer establish that he was personally involved in the violation. *See Arocho v. Nafziger*, 367 Fed. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff does not allege that Defendant Chuang was personally involved in the forced catheterization by actually directing his subordinates to take the action that resulted in the alleged violation of Plaintiff's constitutional rights. *See Woodward*, 977 F.2d at 1400. In a conclusory manner, Plaintiff alleges that prior to his forced catheterization, Defendant Chuang was made aware of the circumstances leading to Plaintiff's hospitalization and yet allowed the catheterization to happen. *Am. Compl.* [#60] at 8. This, however, is not enough to demonstrate personal participation by a supervisor. *See Arocho*, 367 Fed. App'x at 947 n.4. In addition, Plaintiff also contradictorily states that, Defendant Chuang's subordinates took their actions "with full confidence that Dr. Chuang . . . would meet their conduct with approval," thereby implying that Defendant Chuang had not ordered his subordinates' action and that he was unfamiliar with their conduct at the time it was happening. *See Am. Compl.* [#60] at 7.

Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to establish a basis for imposing supervisory liability against Defendant Chuang for a constitutional violation pursuant to Section 1983.  The Court therefore **recommends** that Defendant Chuang's motion to dismiss on this point be **granted**.

### b.    Negligence

Because Plaintiff fails to allege personal participation by Dr. Chuang in the events underlying this action, as the Court found above, Plaintiff's claim for negligence against Dr. Chuang must logically be for negligent supervision under Colorado law.[11]  *See Am. Compl.* [#60] at 16-17.  To demonstrate negligent supervision, a plaintiff must allege that the defendant owed the plaintiff a legal duty to supervise others, that the defendant breached that duty, and that the breach of the duty caused the harm that resulted in damages to the plaintiff.  *Settle*, 2013 WL 781110, at *3 (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005)).

"Whether a particular defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for [the] court to resolve."  *Settle*, 2013 WL 781110, at *3 (quoting *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993)).  To determine the existence of this duty, the Court considers "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden guarding against injury or harm, and the consequences of placing the burden upon the actor."  *Settle*, 2013 WL 781110, at *3 (citing *Bath Excavating & Constr. Co.*, 847 P.2d at 1147).  A defendant's duty to supervise arises

---

[11]  As with claims made against Defendant Swan and the other Defendants, the Court ignores the conclusory legal labels Plaintiff applies to his negligence claim against Defendant Chuang to the extent necessary "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis".  *See Castro*, 540 U.S. at 381.

only when he "has reason to know" that his agent or employee "is likely to harm others" because of "his qualities" and "the work or instrumentalities entrusted to him." *Settle*, 2013 WL 781110, at *3 (quoting *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988) (emphases removed)).   Therefore, there is only a breach of the duty to supervise if the principal/employer knows that the agent/employee is "incompetent, vicious, or careless" and fails to take "the care which a prudent [person] would take in selecting the person for the business at hand." *Settle*, 2013 WL 781110, at *3 (quoting *Destefano*, 763 P.2d at 287; citing *Keller*, 111 P.3d at 448 (stating that the duty is breached when the "employer knows or should have known that the employee would cause harm"); *Moses v. Diocese of Colo.*, 863 P.2d at 310, 327 (Colo. 1993) (stating that there is a breach of the duty to care when the defendant does not recognize "potential employee attribute[s] of character or prior conduct which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities" (internal quotation omitted)).

Negligent supervision is a direct tort, so the plaintiff must allege that the defendant had a duty and personally breached that duty, not merely that the agent/employee had and breached a duty, for which the defendant as principal or employer is vicariously liable. *Settle*, 2013 WL 781110, at *3 (citing *Keller*, 111 P.3d at 448).   In *Settle v. Basinger*, 2013 WL 781110, the Court of Appeals affirmed the trial court's denial of the plaintiffs' motion to add a claim for negligent supervision of a defendant-physician over defendant-nurses in an emergency medical care situation.   In that case, the physician was actually present and placing a chest tube in the plaintiff-patient while the nurses unsuccessfully attempted to intubate the plaintiff-patient.   *Id.* at *1.   The trial court determined that such a claim under those circumstances would not survive a motion to dismiss because:

Plaintiffs did not allege that the nurses, because of their personal qualities,

were likely to harm others in view of the work or instrumentalities entrusted to them.  They did not allege that Dr. Basinger hired, employed, requested, or knew the Air Life nurses before they arrived such that she would have had an "antecedent ability" to recognize the Air Life nurses' alleged "attribute[s] of character or prior conduct which would create an undue risk of harm" to Mr. Settle.  *Moses*, 863 P.2d at 327.  Nor did plaintiffs allege that Dr. Basinger knew or should have known that, because of their personal attributes, the nurses who attempted the intubation posed a risk of harm to Mr. Settle when they did so.  *See Keller*, 111 P.3d at 448.  Thus, plaintiffs alleged no facts upon which the court could have concluded that Dr. Basinger owed them a duty to supervise the Air Life nurses when they attempted the intubation.  Therefore, the trial court did not abuse its discretion when it denied plaintiffs' motion to amend their complaint to include a claim for negligent supervision against Dr. Basinger.

*Id.* at *4.

Here, Plaintiff has alleged little more than did the plaintiffs in *Settle*, other than that Defendant Chuang knew his subordinates before Plaintiff's emergency room visit on August 28, 2010.  Plaintiff asserts that Defendant Chuang "failed to properly supervise Swan, Englund, Hansue, and other security and medical personnel when [he] allowed [his] subordinates to assault, mistreat, and perform procedures and make medical decisions without proper supervision, guidance, and/or training, as well as failed to hire qualified and necessary staff to provide overall supervision when running St. Anthony's and Centura Hospital, resulting in an understaffed and underqualified emergency room with a propensity for negligent services and treatment of patients."  *Am. Compl.* [#60] at 17.  Pursuant to *Settle*, the Court finds that Plaintiff's vague and conclusory assertions are insufficient to allege that Defendant Chuang owed Plaintiff a duty to supervise his subordinates when they performed the catheterization on Plaintiff.  Thus, Plaintiff fails to state a claim for negligent supervision against Defendant Chuang.

Accordingly, the Court **recommends** that Defendant Chuang's motion to dismiss on this basis be **granted**.

### c.   Outrageous Conduct

The previous discussion regarding the law in this area applies here as well. *See supra* § III.B.2.a. Unlike Defendant Swan, Plaintiff has made no non-conclusory allegations that Dr. Chuang participated in the alleged outrageous conduct, as the Court discussed in Section III.B.3.a. Therefore, the Court **recommends** that Defendant Chuang's motion to dismiss Plaintiff's Claim Six (outrageous conduct) be **granted**.

### d.   Invasion of Privacy

The Court examines the sufficiency of Plaintiff's allegations regarding invasion of privacy against Defendant Chuang *sua sponte*. Plaintiff makes no non-conclusory allegations that Dr. Chuang participated in the alleged invasion of his privacy, as the Court discussed in Section III.B.3.a. above. Therefore, the Court also **recommends**, *sua sponte*, that this claim be **dismissed** as to Defendant Chuang.

### 4.   Conclusion

Based on the foregoing, the Court **recommends** that Defendants Swan and Chuang's Motion to Dismiss [#71] be **granted in part and denied in part**.

With respect to Defendant Swan, the Court **recommends** that the Motion to Dismiss be **denied**.[12]

With respect to Defendant Chuang, the Court **recommends** that the Motion to Dismiss be **granted** and that all claims against him be **dismissed without prejudice**.

### C.   Defendants St. Anthony, Centura, Englund, and Hansue's Motion to Dismiss

In support of their Motion to Dismiss [#69], Defendants St. Anthony, Centura,

---

[12] The following claims remain against Defendant Swan: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Three (negligence), Claim Four (retaliation), Claim Five (invasion of privacy), and Claim Seven (conspiracy).

Englund, and Hansue argue that Plaintiff's Amended Complaint: (1) fails to state a *respondeat superior* or *Monell* claim against Defendants St. Anthony and Centura as a matter of law; (2) fails to substantiate the conclusory allegation that Defendants St. Anthony, Centura, Englund, and Hansue are state actors to support Plaintiff's Section 1983 claims; (3) fails to state a claim for relief against Defendants Englund and Hansue for alleged liability in their individual or official capacities; (4) fails to state a claim for alleged medical negligence as matter of law; (5) fails to allege independent and actionable outrageous conduct; and (6) fails to meet the standards required by Rule 8.  The Court addresses the final argument first.

### 1.    Pleading Requirements of Rule 8

For the reasons stated in Section III.B.1. above, the Court **recommends** that Defendants St. Anthony, Centura, Englund, and Hansue's motion to dismiss the Amended Complaint on the basis of Rule 8 be **denied**.

### 2.    Outrageous Conduct

For the reasons stated in Section III.B.2.d. above, the Court **recommends** that Defendants St. Anthony, Centura, Englund, and Hansue's motion to dismiss Plaintiff's Claim Six (outrageous conduct) be **denied**.

### 3.    Defendants Englund and Hansue

#### a.    Personal Participation

The previous discussion regarding the law in this area applies here as well.  *See supra* § III.B.2.a.  Despite Defendants Englund and Hansue's conclusory assertions to the contrary, the Court finds that Plaintiff has alleged their personal involvement in the events underlying this lawsuit.  The Court has found that the allegations against Defendant Englund, as stated above in Section III.B.2.a., clearly demonstrate Defendant Englund's

-41-

alleged personal participation.  The specific allegations against Defendant Hansue are far fewer.  However, Plaintiff asserts that Defendant Hansue, along with Defendants Swan, Englund, and others, allegedly "stripped [Plaintiff's] hands away [from his genitals], twisted Plaintiff's ankle outward, beat him, confined him, and choked him."  *Id.*  These statements are sufficient to allege Defendant Hansue's presence and involvement in the events underlying this action.

Unfortunately, like Defendant Swan, Defendants Englund and Hansue provide no analysis of Plaintiff's specifically asserted constitutional violations against them based on their alleged actions on August 28, 2010.  *Motion* [#71] at 7.  As previously indicated, *see supra* § III.B.2.a., it is not the Court's responsibility either to *sua sponte* raise or construct arguments in support of Defendants Englund and Hansue's Motion to Dismiss.  Thus, the Court both finds that Plaintiff has alleged Defendants Englund and Hansue's personal involvement in the events of August 28, 2010, and that these Defendants have failed to appropriately argue that Plaintiff's allegations are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that Defendants Englund and Hansue's motion to dismiss on grounds of lack of personal participation be **denied**.

### b.    State Actors

The previous discussion regarding the law in this area applies here as well.  *See supra* § III.B.2.b.  Plaintiff has alleged that law enforcement personnel instigated, discussed, and agreed with Defendant Englund and others to take a sample of Plaintiff's urine without his consent, to use force against Plaintiff to obtain this sample, and to prevent Plaintiff from reporting asserted law enforcement misconduct until a urine sample was obtained.  *See Am. Compl.* [#60] at 5-6.  Plaintiff further alleges that Defendants Englund

and Hansue worked jointly with law enforcement personnel to physically restrain and subdue Plaintiff immediately before and during the catheterization process. *Id.* at 6. Thus, despite Defendants Englund and Hansue's conclusory assertions to the contrary, Plaintiff has sufficiently alleged Defendants Englund and Hansue's participation in joint activity with state law enforcement personnel during the events underlying this lawsuit.

These Defendants also generally assert that there has been no constitutional violation to support joint-action liability, but provide no analysis of the legal issues. *Motion* [#69] at 7-10. It is not the Court's responsibility either to *sua sponte* raise or construct arguments in support of Defendants' Motion to Dismiss. *See supra* § III.B.2.a. Thus, the Court finds both that Plaintiff has sufficiently alleged Defendants Englund and Hansue's joint activity with state law enforcement personnel on August 28, 2010, and that Defendants have failed to appropriately argue that Plaintiff's allegations are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that Defendant Englund and Hansue's motion to dismiss on the basis that they are not state actors be **denied**.

### c.     Negligence

The previous discussion regarding the law in this area applies here as well. *See supra* § III.B.2.c. Defendants Englund and Hansue devote two sentences in their Motion and one sentence in their Reply to contesting the merits of Plaintiff's negligence claim against them. [#69] at 11-12; [#102] at 10. They merely state that "the formulaic allegations and naked assertions which attempt to recite the required elements are insufficient to establish the negligence claim against" them. *Motion* [#69] at 11 (internal quotations omitted). The Court has already discussed many of the non-conclusory allegations Plaintiff makes in his Amended Complaint against Defendants Englund and Hansue. *See* §

III.C.3.a.  As with Defendant Swan, *see supra* § III.B.2.c., without adequate briefing on the issue, the Court concludes, solely for the purpose of determining this Motion, that Defendants Englund and Hansue, as medical professionals, owed a duty of care to Plaintiff. *See Settle*, 2013 WL 781110, at *7.  The Court further finds it plausible pursuant to *Iqbal* that the catheterization *may* have been negligently performed if, as Plaintiff alleges, he discharged blood for a week after the procedure, he suffered extreme pain when he urinated for two months after the procedure, and he developed an infection causing puss to discharge for a year and a half after the procedure, until he received antibiotics for its treatment.  *See Am. Compl.* [#60] at 6.  However, Plaintiff's Amended Complaint is devoid of allegations that Defendant Hansue, although present and participating in other ways, provided any medical care to Plaintiff, negligent or otherwise.

Accordingly, the Court **recommends** that Defendant Englund's motion to dismiss the negligence claim be **denied** and that Defendant Hansue's motion to dismiss the negligence claim be **granted**.

### 4.  Defendants St. Anthony and Centura

#### a.  Constitutional Claims

##### i.  State Actors

For the reasons set forth in Section III.C.3.b. above, the Court finds that Plaintiff has adequately pled that Defendants St. Anthony and Centura were state actors through the actions of their employees Defendants Englund and Hansue.  Accordingly, the Court **recommends** that Defendant St. Anthony and Centura's motion to dismiss on the grounds that they are not state actors be **denied**.

##### ii.  *Monell*

Defendants St. Anthony and Centura argue that they are entitled to immunity against

constitutional claims brought under 42 U.S.C. § 1983 pursuant to *Monell v. New York City Department of Social Services*, 426 U.S. 658 (1978).  In that case, the United States Supreme Court held that a municipality cannot be held liable pursuant to Section 1983 merely based on the unauthorized actions of its agents.  The municipality may only be liable if it had an "official municipal policy of some nature" that was the "direct cause" or "moving force" behind the alleged constitutional violations.[13]  *Id.* at 691; *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986).  Later Supreme Court cases have indicated that the plaintiff must show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider*, 2013 WL 2421071, at *7 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997); *City of Canton v. Harris*, 489 U.S. 389 (1989).

The Supreme Court's interpretation of Section 1983 in *Monell* originally applied only to municipal governments and not to private entities acting under color of state law.  The Tenth Circuit Court of Appeals has extended the doctrine to private Section 1983 defendants.  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (2003).  Thus, a private actor "cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* (quoting *Monell*, 436 U.S. at 691).  Defendants St. Anthony and Centura are therefore correct that Plaintiff may not pursue liability against them on his Section 1983 claims based on *respondeat superior*.

In *Schneider v. City of Grand Junction Police Dep't*, 2013 WL 2421071, at *5, 7, the

---

[13]  Defendants St. Anthony and Centura may also argue that, because Plaintiff has not alleged colorable Section 1983 claims against Defendants Englund and Hansue, the derivative claims against Defendants St. Anthony and Centura should also be dismissed.  *Motion* [#69] at 6-7. However, because the Court has already determined that the allegations against Defendants Englund and Hansue are in part sufficient to survive their Motion to Dismiss, the Court need not address this contention by Defendant St. Anthony and Centura.  *See Granato v. City & Cnty. of Denver*, No. 11-cv-00304-MSK-BNB, 2011 WL 3820730, at *8 (D. Colo. Aug. 30, 2011).

Tenth Circuit noted that, although *Iqbal* articulated a stricter standard for personal involvement to establish supervisory liability, nothing in *Iqbal* changed the interpretation of Section 1983 standards for imposing municipal liability. The Court confirmed that the elements of a *Monell* claim remain viable: (1) an official policy or custom; (2) causation; and (3) state of mind. *Id.* at *7.

Regarding the element requiring an official policy or custom, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (quoting *Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible ." *Schneider*, 2013 WL 2421071, at *7 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 2013 WL 2421071, at *7 (citation omitted).

Regarding causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id.* at *8 (internal quotation omitted). The plaintiff must demonstrate that "the municipality was the moving force behind the injury alleged." *Id.* (internal quotation omitted) (quoting *Brown*, 520 U.S. at 404). In other words, the plaintiff must show "a direct causal link between the municipal action and the deprivation of federal rights." *Schneider*, 2013 WL 2421071, at *8 (quoting *Brown*, 520 U.S. at 404). Further, as with Section 1983 supervisory liability, Section 1983 municipal

liability cannot be established on a vicarious liability theory. *Schneider*, 2013 WL 2421071, at *8. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Brown*, 520 U.S. at 405). Further, "[t]he causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider*, 2013 WL 2421071, at *8 (citation omitted).

Finally, regarding the state-of-mind element, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* (quoting Brown, 520 U.S. at 407; citing *City of Canton*, 489 U.S. at 389).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]

*Schneider*, 2013 WL 2421071, at *8 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citations and internal quotation marks omitted)). The applicable state-of-mind element may vary for individual defendants depending on the type of constitutional violation at issue. *Schneider*, 2013 WL 2421071, at *8 n.5 (citations omitted). However, "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless

of the nature of the underlying constitutional violation." *Id.*

Plaintiff alleges the following policies, customs, or practices: (a) "failing to adequately respond to and investigate complaints regarding officer misconduct that has bred a culture and atmosphere where such illegal and unconstitutional behavior is ratified and condoned, in reckless and complete disregard for the rights of person[s];" (b) repeatedly failing to discipline their employees and prosecute misconduct with respect to violations of the laws and statutes of Colorado, the Constitution of the United States, and the policies of the City and County of Denver regarding excessive force, perjury, unauthorized forced catheterization, unauthorized collection of bodily fluids, and preservation and production of exculpatory evidence;" (c) "misusing catheterization to collect bodily fluids and/or abuse civilians;" (d) "forcing [Plaintiff] to submit to a urine analysis when reporting the assault of a Denver Police Officer or demanding to speak to internal affairs;" (e) "failing to adequately train and supervise personnel with respect to including but not limited to [sic] the use of force, the use of a catheter, directing medical personnel to collect and preserve evidence, and reporting and documenting official misconduct, and when to conflict or remove one self from an investigation, as well as the proper disciplining and prosecution of unconstitutional or illegal conduct;" (f) "condoning and approving acts of retaliation by subordinate[s] when seeking to prevent exposure of officer misconduct, to prevent citizens from asserting their political freedom and/or cover up misconduct;" and (g) "negligently hiring and retaining officials with a propensity or history of misconduct and unconstitutional behavior." *Am. Compl.* [#60] at 9.

The Court agrees with Defendants St. Anthony and Centura's argument that many of these asserted policies and customs, *see, e.g.*, *Am. Compl.* [#60] ¶ 23(g), are "repetitious, conclusory allegations of an alleged policy." *Motion* [#69] at 5-6. These

conclusory pleadings are insufficient to state a claim. *See Granato v. City & Cnty. of Denver*, No. 11-cv-00304-MSK-BNB, 2011 WL 3820730, at *8 (D. Colo. Aug. 30, 2011). Further, several of the policies and customs refer more closely to Defendant City and County of Denver (as discussed in Section III.E.4. below), and thus confuse the legal issue regarding whether Plaintiff has sufficiently alleged a policy or custom promulgated specifically by Defendants St. Anthony and Centura. *See, e.g.*, *Am. Compl.* [#60] ¶ 23(a). However, given the allegations in this case, the Court cannot find that Plaintiff has failed to allege a policy or custom regarding the use of catheters in unwilling or combative emergency room patients. The Court further finds that the Amended Complaint sufficiently alleges that policy *may* have caused the events underlying this action. Whether such policy actually exists and caused the results that Plaintiff alleges is a matter for discovery.

Accordingly, the Court **recommends** that Defendants St. Anthony and Centura's motion to dismiss the *Monell* claim be **denied**.

### b.   Negligence

Defendants St. Anthony and Centura argue that Plaintiff's negligence claim fails because of the corporate-practice-of-medicine doctrine. The doctrine "shields corporations from vicarious liability for the negligent acts of their physician employees" because "a corporation may not employ physicians, perform medical services, or interfere with a physician's independent medical judgment." *Estate of Harper ex rel. Al-Hamim v. Denver Health & Hosp. Authority*, 140 P.3d 273, 275 (Colo. App. 2006). However, the corporate-practice-of-medicine doctrine is applicable solely to the negligent acts of *physicians*. The Colorado Court of Appeals made it clear in *Estate of Harper ex rel. Al-Hamim v. Denver Health & Hospital Authority*, 140 P.3d at 277-78, that the doctrine does not apply to nurses and other non-physician employees. Here, the allegations are that Defendants Englund

and Hansue are both registered nurses and that Defendant Swan is a physician's assistant.[14]   Because none are alleged physicians, the corporate-practice-of-medicine doctrine does not apply and does not shield Defendants St. Anthony and Centura from potential liability based on their non-physician staff's alleged negligence.  *See also Settle*, 2013 WL 781110, at *8 ("Hospitals have a duty to supervise the competence of their medical staffs.") (citing *Braden v. Saint Francis Hosp.*, 714 P.2d 505, 507 (Colo. App. 1985); *Camacho v. Mennonite Bd. of Missions*, 703 P.2d 598, 600 (Colo. App. 1985) (stating that a hospital may be liable for negligently supervising and reviewing the performance of the members of its medical staff)).

Accordingly, the Court **recommends** that Defendants St. Anthony and Centura's motion to dismiss the negligence claim be **denied**.

### 5.   Conclusion

Based on the foregoing, the Court **recommends** that Defendants St. Anthony, Centura, Englund, and Hansue's Motion to Dismiss [#71] be **granted in part and denied in part**.

With respect to Defendant Englund, the Court **recommends** that the Motion to Dismiss be **denied**.[15]

With respect to Defendant Hansue, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Claim Three (negligence) be **dismissed**

---

[14] Defendant Chuang is an alleged physician, but the Court has already found that Plaintiff's negligence claim fails against him, thus precluding liability on this basis against the entity Defendant.  *See supra* III.B.3.b.

[15]   The following claims remain against Defendant Englund: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Three (negligence), Claim Four (retaliation), Claim Five (invasion of privacy), Claim Six (outrageous conduct), and Claim Seven (conspiracy).

**without prejudice**.[16]

With respect to Defendant St. Anthony, the Court **recommends** that the Motion to Dismiss be **denied**.[17]

With respect to Defendant Centura, the Court **recommends** that the Motion to Dismiss be **denied**.[18]

## D.      Defendant Apex's Motion to Dismiss

In support of its Motion to Dismiss [#87], Defendant Apex argues that Plaintiff's Amended Complaint: (1) fails to state a *respondeat superior* or *Monell* claim against Defendant Apex as a matter of law; (2) fails to substantiate the conclusory allegation that Defendant Apex is a state actor to support the Section 1983 claims; (3) fails to allege independent and actionable outrageous conduct; and (4) fails to meet the standards required by Rule 8.  The Court addresses the final argument first.

### 1.      Pleading Requirements of Rule 8

For the reasons stated in Section III.B.1. above, the Court **recommends** that Defendant Apex's motion to dismiss the Amended Complaint on the basis of Rule 8 be **denied**.

### 2.      Outrageous Conduct

---

[16] The following claims remain against Defendant Hansue: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy), Claim Six (outrageous conduct), and Claim Seven (conspiracy).

[17] The following claims remain against Defendant St. Anthony: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Three (negligence), Claim Four (retaliation), Claim Five (invasion of privacy), Claim Six (outrageous conduct), and Claim Seven (conspiracy).

[18] The following claims remain against Defendant Centura: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Three (negligence), Claim Four (retaliation), Claim Five (invasion of privacy), Claim Six (outrageous conduct), and Claim Seven (conspiracy).

For the reasons stated in Section III.B.2.d. above, the Court **recommends** that Defendant Apex's motion to dismiss Plaintiff's Claim Six (outrageous conduct) be **denied**.

### 3.     Constitutional Claims

#### a.     State Actor

For the reasons stated in Section III.B.2.b. above, the Court finds that Plaintiff has adequately pled that Defendant Apex was a state actor through the actions of its employee Defendant Swan.  Accordingly, the Court **recommends** that Defendant Apex's motion to dismiss on the basis that it is not a state actor be **denied**.

#### b.     *Monell*

For the reasons state in Section III.C.4.a.ii. above, the Court finds that Plaintiff has adequately alleged a policy or custom of Defendant Apex.[19]   Accordingly, the Court **recommends** that Defendant Apex's motion to dismiss regarding the *Monell* claim be **denied**.

### 4.     Conclusion

Based on the foregoing, the Court **recommends** that Defendant Apex's Motion to Dismiss [#87] be **denied**.[20]

### E.     The Denver Defendants' Motion

---

[19]  As discussed in Section III.A.1. above, the precise relationships between the individual medical Defendants and the entity medical Defendants is unclear.  Correspondingly, the precise corporate structure between Defendants St. Anthony, Centura, and Apex is also unclear.  Discovery is appropriate to clarify these relationships.

[20]  The following claims remain against Defendant Apex: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy), Claim Six (outrageous conduct), and Claim Seven (conspiracy).  Claim Three (negligence) was not brought against Defendant Apex.  *See Am. Compl.* [#60] at 16-17.

The Denver Defendants move to dismiss Plaintiff's various claims against them[21] on the basis of the Colorado Governmental Immunity Act ("CGIA"), qualified immunity, and failure to state a claim upon which relief may be granted.  *See Motion* [#73] at 3-11.

### 1.      Subject Matter Jurisdiction: CGIA

Plaintiff alleges a state constitutional tort claim for invasion of privacy pursuant to article II, section 7 of the Colorado Constitution and a state-law tort claim for extreme and outrageous conduct against each of the individual Denver Defendants.[22]  *Am. Compl.* [#60] at 20-23.   Under the CGIA, a plaintiff seeking to bring state law claims against state defendants must provide written notice within 180 days of discovering the asserted injury. *Yaklich v. Grand City*, 278 F. App'x 797, 803-04 (10th Cir. 2008) (citing C.R.S. § 24-10-109(1)).  "Compliance with the 180-day notice requirement is a jurisdictional prerequisite and failure to comply with it is an absolute bar to suit." *Id.* (citations omitted).  The notice provisions of the CGIA apply when federal courts exercise their supplemental jurisdiction over Colorado tort claims.  *Renalde v. City & Cnty. of Denver*, 807 F. Supp. 668, 675 (D. Colo. 1992) (holding that Colorado tort claims brought by private plaintiff under pendent jurisdiction are subject to the notice provisions of the CGIA as a jurisdictional prerequisite to suit).  Plaintiff has failed to allege in his Amended Complaint or to argue in his Response that he submitted a timely notice of his claim.  Therefore, Plaintiff's Fifth Claim for invasion of privacy pursuant to article II, section 7 of the Colorado Constitution and Sixth Claim for

---

[21]  The only one of Plaintiff's seven claims not brought against any of the Denver Defendants is the Third Claim for negligence.

[22]  Plaintiff does not bring the claim for outrageous conduct against Defendant City and County of Denver.  *Am. Compl.* [#60] at 22.

the tort of outrageous conduct should be dismissed against the Denver Defendants.[23]

Thus, the Court respectfully **recommends** that the Denver Defendants' motion to dismiss on the basis of the CGIA be **granted**, and, therefore, that Plaintiff's Fifth Claim for invasion of privacy pursuant to article II, section 7 of the Colorado Constitution and Sixth Claim be **dismissed with prejudice** against them.[24] *Compare Brereton*, 434 F.3d at 1216-17 (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim"), *with Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 842 (10th Cir. 2003) ("[I]f the plaintiff fails to plead compliance [with the CGIA] and cannot cure this defect, Colorado courts dismiss the claims with prejudice."), *and with Martinez v. El Paso Cnty.*, 673 F. Supp. 1030, 1032 (D. Colo. 1987) ("I find and conclude that the Fourth through Eighth and Tenth and Eleventh Claims must be dismissed with prejudice as to the plaintiffs . . . for failure to give timely notice as required under § 24–10–109.").

### 2.    Personal Participation

Defendants Lucio, Black, O'Neill, Lopez, Carter, and Thomas argue that Plaintiff has failed to provide fair notice of the grounds for the claims made against each of them because of the collective allegations Plaintiff made against them regarding his Section 1983 claims. *Motion* [#73] at 5.

---

[23]   The Court also notes that Julie Harl, the custodian of the claims files at the Denver City Attorney's office, filed an affidavit stating that no claim was filed by Plaintiff within 180 days of August 28, 2010, the date of the underlying events in this action. *Aff. of Julie Harl* [#73-1] ¶¶ 3, 5; *see Holt*, 46 F.2d at 1002 (stating that the Court may examine documents other than the complaint in determining whether it has subject matter jurisdiction).

[24]   This specific recommendation does not relate to Plaintiff's Fifth Claim for invasion of privacy pursuant to the Fourth Amendment of the United States Constitution.

### a.   Defendants Lucio, Black, O'Neill, and Lopez

The previous discussion regarding the law in this area is also applicable here.  *See supra* § III.B.2.a.  The only specific non-conclusory allegation against Defendant Lucio is that he was part of the alleged assault on Plaintiff on August 28, 2010, before Plaintiff was transported to the hospital.  *Am. Compl.* [#60] at 5.  The other allegations in the Amended Complaint that refer to Defendant Lucio are so broad, conclusory, or vague that the Court finds they fail to adequately allege Defendant Lucio's personal participation in the events underlying this lawsuit.  *See, e.g.*, *id.* at 7 ("Regardless, Swan, Englund, Hansue, Black, [O'Neill], Lopez, and Lucio, under the direction and approval of Cpt. Carter, Lt. Thomas, and Dr. Chuang, strategized and effected this utterly gross conduct with complete disregard for [Plaintiff's] safety and well being, concerned only with their goal and shared agreement to prevent [Plaintiff] from talking to internal affairs about his assault by punishing him and breaking his spirit through the use of brutal force and torture.").  Although the alleged assault prior to Plaintiff's transport to the hospital is the initiating event in the series of events underlying this lawsuit, the claims in this lawsuit do not otherwise concern events occurring prior to Plaintiff's hospital visit.  In other words, Plaintiff's claims all directly stem from events at the hospital, and no claim is presented in connection with the initial altercation with police.  In addition, the Court found nothing in the Amended Complaint alleging any specific conduct by Defendant Lucio at the hospital.  In fact, notably, Plaintiff only once alleges, ambiguously, that Defendant Lucio was present at the hospital.  *See id.* Construing the factual allegations in a light most favorable to Plaintiff, the Court finds that although these allegations may be sufficient to establish plausible grounds for Defendant Lucio's presence in the hospital, they do not plausibly establish any specific conduct by him.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004) ("Any factual

disputes are resolved in the plaintiff's favor."). The Court therefore finds that the allegations in Plaintiff's Amended Complaint are insufficient to demonstrate Defendant Lucio's personal participation in the events underlying the claims in this action.

Unlike Defendant Lucio, Plaintiff makes sufficient factual allegations against Defendants Black, O'Neill, and Lopez to establish personal participation. For example, Plaintiff states that Defendant Black forcefully and painfully wiped blood from Plaintiff's face. *Id.* at 5. Plaintiff states that Defendants Black, O'Neill, and Lopez, along with medical personnel, discussed the plan to catheterize Plaintiff. *Id.* at 6, 7. Plaintiff states that Defendant Black and other security physically restrained him while the catheterization occurred. *Id.* at 6. He states that he believes that Defendant Black struck him "in the testicles, causing him to release his hands that were covering his privates." *Id.* He states that Defendant Black and the officers laughed as they released Plaintiff's throat and again wiped blood from his face. *Id.* Although Plaintiff makes his most specific allegations against Defendant Black, the Court finds that Plaintiff has also sufficiently alleged Defendants O'Neill and Lopez's presence and participation in the events underlying Plaintiff's claims. Accordingly, the Court finds that these statements are sufficient to demonstrate Defendants Black, O'Neill, and Lopez's personal participation.

Like Defendants Swan, Englund, and Hansue, however, Defendants Black, O'Neill, and Lopez provide no analysis of Plaintiff's specifically asserted constitutional claims against them based on their alleged actions on August 28, 2010. *Motion* [#73] at 5. For the reasons stated in Section III.B.2.a. above, it is not the Court's responsibility either to *sua sponte* raise or construct arguments in support of Defendants Black, O'Neill, and Lopez's Motion to Dismiss. Thus, the Court finds both that Plaintiff has alleged Defendants Black, O'Neill, and Lopez's personal involvement in the events of August 28, 2010, and that

these Defendants have failed to appropriately argue that Plaintiff's allegations are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that Defendants Black, O'Neill, and Lopez's motion to dismiss on the basis of lack of personal participation be **denied**, and that Defendant Lucio's motion to dismiss on the basis of lack of personal participation be **granted**.

### b.    Defendants Thomas and Carter

Defendants Thomas and Carter were allegedly superior officers of Defendants Lucio, Black, O'Neill, and Lopez. *See, e.g.*, *Am. Compl.* [#60] at 7. Here, the Amended Complaint contains no allegations either that Defendants Thomas or Carter personally participated in the taking of a urine sample from Plaintiff or that they were present at the time of this event. The Court assumes that Plaintiff's theory of liability with regard to Defendants Thomas and Carter rests on their roles as supervisors of Defendants Lucio, Black, O'Neill, and Lopez. The previous discussion regarding the law of supervisory liability is applicable here. *See supra* § III.B.3.a.

Plaintiff does not allege that Defendants Thomas and Carter were personally involved by being present and actually directing their subordinates to take the action that resulted in the alleged violation of Plaintiff's constitutional rights. *See Woodward*, 977 F.2d at 1400. In a conclusory manner, Plaintiff alleges that prior to his forced catheterization, Defendants Thomas and Carter were made aware of the circumstances leading to Plaintiff's hospitalization and yet allowed the catheterization to happen. *Am. Compl.* [#60] at 8. These allegations, however, are insufficient to assert personal participation by a supervisor. *See Arocho*, 367 Fed. App'x at 947 n.4. In addition, Plaintiff also contradictorily states that, Defendants Thomas and Carter's subordinates took their actions "with full

confidence that . . . Cpt. Carter [and] Lt. Thomas . . . would meet their conduct with approval," thereby implying that Defendants Carter and Thomas did not order their subordinates' actions and were unfamiliar with their conduct at the time it was happening. *See Am. Compl.* [#60] at 7.

Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to establish a basis for imposing supervisory liability against Defendants Thomas and Carter for any constitutional violation pursuant to Section 1983.   The Court therefore **recommends** that their motion to dismiss on this basis be **denied**.

### 3.    Qualified Immunity

The individual Denver Defendants also assert qualified immunity as to Plaintiff's claims.   Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.   One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*   However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.*   The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim.

*Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.*, 494 F.3d 891, 903 (10th Cir. 2007).

The plaintiff bears the burden of proving that the defendants' actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier*, 533 U.S. at 201 ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition ."). "[T]he right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 202 (citation omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. After all, "qualified immunity precludes

the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

The individual Denver Defendants have not provided the Court with *any* analysis regarding why the constitutional claims should be dismissed, *i.e.*, they present no argument regarding whether Plaintiff has sufficiently alleged a constitutional violation or whether such a constitutional right was clearly established on August 28, 2010. Like the medical defendants' position regarding Plaintiff's constitutional claims, the Denver Defendants merely assert a defense (in this case qualified immunity), then conclusorily state that Plaintiff has alleged no facts, and therefore they decline to address the merits of Plaintiff's Section 1983 claims. As previously noted in Section III.B.2.a., it is not the Court's responsibility either to *sua sponte* raise or construct arguments in support of Defendants' request to dismiss Plaintiff's claims against them. *See, e.g.*, Continental Materials Corp., 2012 WL 4442743, at *7. Thus, the Court finds that the Denver Defendants have failed to appropriately argue that Plaintiff's allegations are insufficient to demonstrate a violation of constitutional law.

Accordingly, the Court **recommends** that the Denver Defendants' motion to dismiss on the basis of qualified immunity be **denied**.

### 4.     *Monell*

The previous discussion regarding the law in this area and the policies and customs asserted by Plaintiff also applies here. *See supra* § III.C.4.a.ii.

As before, the Court notes that many of the asserted policies and customs are

repetitious and conclusory and therefore insufficient to state a claim.[25]  *See* § III.C.4.a.ii.

(citing *Granato*, 2011 WL 3820730, at *8).  Further, several of the policies and customs

refer more closely to Defendants St. Anthony, Centura, and Apex, and thus confuse the

legal issue of whether Plaintiff has sufficiently alleged a policy or custom promulgated

specifically by Defendant City and County of Denver.  *See* § III.C.4.a.ii.  However, given

the allegations in this case and the lack of focused briefing on the issue, the Court cannot

find that Plaintiff has failed to allege a policy or custom regarding when law enforcement

personnel can request the use of catheters to obtain urine samples from unwilling or

combative emergency room patients who are detained by law enforcement.  The Court

further finds that such policy *may* have caused the events underlying this action.  Whether

such policy actually exists and caused the results that Plaintiff alleges is a matter for

discovery.  But, at this early stage of the litigation, the Court finds that Plaintiff has

sufficiently alleged a policy or custom of Defendant City and County of Denver.

Accordingly, the Court **recommends** that Defendant City and County of Denver's

motion to dismiss the *Monell* claim be **denied**.

### 5.    Invasion of Privacy

As with Defendant Chuang, *see supra* § III.B.3.d., Defendant Lucio did not raise the

issue of whether Plaintiff's claim of invasion of privacy should be dismissed.  However,

there are no non-conclusory allegations that Defendant Lucio participated in the alleged

invasion of Plaintiff's privacy, as the Court discussed in Section III.E.2.a. above.  Therefore,

---

[25] Defendant City and County of Denver also argues that, because Plaintiff has not alleged colorable Section 1983 claims against the individual Denver Defendants, the derivative claims against it should also be dismissed. *Motion* [#73] at 7; *Reply* [#104] at 4-5. However, because the Court has already determined that the allegations against Defendants Black, O'Neill, and Lopez are sufficient to survive their motion to dismiss, the Court need not address this contention.  *See Granato*, 2011 WL 3820730, at *8.

the Court **recommends** that this cause of action should also be **dismissed** as to Defendant Lucio.

### 6.    Conclusion

Based on the foregoing, the Court **recommends** that the Denver Defendants' Motion to Dismiss [#73] be **granted in part and denied in part**.

With respect to Defendant Lucio, the Court **recommends** that the Motion to Dismiss be **granted**, that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**, and that all other claims against Defendant Lucio be **dismissed without prejudice**.

With respect to Defendant Black, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**.[26]

With respect to Defendant O'Neill, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**.[27]

---

[26] The following claims remain against Defendant Black: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy pursuant to the Fourth Amendment of the United States Constitution), and Claim Seven (conspiracy). Claim Three (negligence) was not brought against Defendant Black. *Am. Compl.* [#60] at 10.

[27] The following claims remain against Defendant O'Neill: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy pursuant to the Fourth Amendment of the United States Constitution), and Claim Seven (conspiracy). Claim Three (negligence) was not brought against Defendant O'Neill. *Am. Compl.* [#60] at 10.

With respect to Defendant Lopez, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**.[28]

With respect to Defendant Carter, the Court **recommends** that the Motion to Dismiss be **granted**, that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**, and that all other claims be **dismissed without prejudice**.

With respect to Defendant Thomas, the Court **recommends** that the Motion to Dismiss be **granted**, that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**, and that all other claims be **dismissed without prejudice**.

With respect to Defendant City and County of Denver, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Fifth Claim (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) be **dismissed with prejudice**.[29]

## IV. Conclusion

---

[28] The following claims remain against Defendant Lopez: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy pursuant to the Fourth Amendment of the United States Constitution), and Claim Seven (conspiracy). Claim Three (negligence) was not brought against Defendant Lopez. *Am. Compl.* [#60] at 10.

[29] The following claims remain against Defendant City and County of Denver: Claim One (unreasonable search and seizure), Claim Two (excessive force), Claim Four (retaliation), Claim Five (invasion of privacy pursuant to the Fourth Amendment of the United States Constitution), and Claim Seven (conspiracy). Claim Three (negligence) and Claim Six (outrageous conduct) were not brought against Defendant City and County of Denver. *Am. Compl.* [#60] at 10, 22 n.10.

For the foregoing reasons, the Court respectfully **RECOMMENDS** as follows:

(1)     that Defendants Swan and Chuang's Motion to Dismiss [#71] be **GRANTED**

**in part and DENIED in part**, as follows:

(a) with respect to Defendant Swan, the Court **recommends** that the Motion

to Dismiss be **denied**; and

(b) with respect to Defendant Chuang, the Court **recommends** that the

Motion to Dismiss be **granted** and that all claims against him be **dismissed**

**without prejudice**;

(2)     that Defendants St. Anthony, Centura, Englund, and Hansue's Motion to

Dismiss [#69] be **GRANTED in part and DENIED in part**, as follows:

(a) with respect to Defendant Englund, the Court **recommends** that the

Motion to Dismiss be **denied**;

(b) with respect to Defendant Hansue, the Court **recommends** that the

Motion to dismiss be **granted in part** and that Plaintiff's Claim Three

(negligence) be **dismissed without prejudice**;

(c) with respect to Defendant St. Anthony, the Court **recommends** that the

Motion to Dismiss be **denied**; and

(d) with respect to Defendant Centura, the Court **recommends** that the

Motion to Dismiss be **denied**;

(3)     that Defendant Apex's Motion to Dismiss [#87] be **DENIED**;

(4)     that the Denver Defendants' Motion to Dismiss [#73] be **GRANTED in part**

**and DENIED in part**, as follows:

(a) with respect to Defendant Lucio, the Court **recommends** that the Motion

to Dismiss be **granted** and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice** and that all other claims against him be **dismissed without prejudice**;

(b) with respect to Defendant Black, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**;

(c) with respect to Defendant O'Neill, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**;

(d) with respect to Defendant Lopez, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**;

(e) with respect to Defendant Carter, the Court **recommends** that the Motion to Dismiss be **granted**, and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**, and that all other claims be **dismissed without prejudice**;

(f) with respect to Defendant Thomas, the Court **recommends** that the Motion to Dismiss be **granted**, that Plaintiff's Claim Five (invasion of privacy

pursuant to article II, section 7 of the Colorado Constitution) and Claim Six (outrageous conduct) be **dismissed with prejudice**, and that all other claims be **dismissed without prejudice**; and

(g) with respect to Defendant City and County of Denver, the Court **recommends** that the Motion to Dismiss be **granted in part** and that Plaintiff's Claim Five (invasion of privacy pursuant to article II, section 7 of the Colorado Constitution) be **dismissed with prejudice**;

(5)     that, *sua sponte*, Plaintiff's requests for declaratory relief against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction; and

(6)     that all other relief sought by Defendants be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th

Cir. 1996).

Dated July 8, 2013, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge