IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02257-REB-KLM

DEAN CARBAJAL,

      Plaintiff,

v.

ST. ANTHONY CENTRAL HOSPITAL, a corporation,
CENTURA HEALTH, a corporation,
STEPHAN M. SWAN, Physician Assistant, in his official and individual capacities,
GREGORY J. ENGLUND, Registered Nurse, in his official and individual capacities,
MARCI L. HANSUE, Registered Nurse, in her official and individual capacities,
MICHAEL O'NEILL, Police Officer for the Denver Police Department, in his official and
individual capacities,
JAY LOPEZ, Police Officer for the Denver Police Department, in his official and individual
capacities,
LARRY BLACK, Police Officer for the Denver Police Department, in his official and
individual capacities, and
APEX, a corporation,

      Defendants.
_____

## ORDER
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

      This matter is before the Court on Plaintiff's **Motion for Appointment [of] Expert

Pursuant to the Court's Order [Doc. #145]** [#196] (the "Motion").  Defendants filed a

Response [#203] in opposition to the Motion.  Plaintiff did not file a Reply.

      Plaintiff is proceeding pro se.  He requests the Court to appoint and pay for two

urologists as expert witnesses in this matter.  Pursuant to Federal Rule of Evidence 706,

a District Court "may on its own motion or on the motion of any party enter an order to show

cause why expert witnesses should not be appointed, and may request the parties to

submit nominations.  The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection."  However, Rule 706 provides no explicit instruction as to when an expert should be appointed by the Court. "While Rule 706 provides no standard for determining when to appoint an expert, the policy [of promoting accurate factfinding] underlying the provision supplies some guidance."  29 Federal Practice and Procedure, Wright & Gold, § 6304, at 465 (1997).  Courts have hesitated to find any affirmative obligation to exercise their Rule 706 power.  *See, e.g., Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996); *Okla. Natural Gas Co. v. Mahan & Rowsey, Inc.*, 786 F.2d 1004, 1007 (10th Cir. 1986).  In the absence of "complex scientific evidence or complex issues," the circuit courts have held that a district court does not abuse its discretion in declining to appoint an expert pursuant to Rule 706.  *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991); *see also  Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 53 (10th Cir. Dec.18, 2003) ("Given the relative lack of complexity of [the] case and [Plaintiff's] failure to submit any evidence that he was financially unable to retain his own physician, we cannot say that the refusal to appoint an expert constituted abuse of discretion.").

Further, as relevant here, reasonable compensation for an appointed expert is payable "by the parties in the proportion and at the time the court directs—and the compensation is then charged like other costs."  Fed. R. Evid. 706(c).  Courts have held that, under Rule 706(c), a District Court can apportion costs of an expert witness, and that this authority extends to excusing indigent parties from paying their share of the costs. *See, e.g.,  Ledford v. Sullivan*, 105 F.3d 354, 360-61 (7th Cir. 1997).  Plaintiff proceeds in forma pauperis in this matter.  Importantly, the Court has no existing funds to pay for the

appointment of an expert witness in a civil case. *See Patel v. United States*, 399 F. App'x 355, 359 (10th Cir. 2010) (citing 28 U.S.C. § 1915(c) for the proposition that "the in forma pauperis statute makes no provision for litigation expenses other than the reproduction of the record and transcripts"). As the Tenth Circuit Court of Appeals has stated in another lawsuit initiated by a pro se prisoner claiming, in part, medical negligence:

> The plaintiffs' dilemma in being unable to proceed in this damage suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems. Nonprisoners often resolve that difficulty through contingent fee retainers with provisions for arranging expert testimony. By seeking government funding in this case, plaintiffs are in effect asking for better treatment than their fellow-citizens who have not been incarcerated but who have at least equal claims for damages.

*Id.* (quoting *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987)). Thus, neither Plaintiff nor the Court has the ability to pay for an expert witness. As a result, if the Court were to appoint Plaintiff's requested expert witnesses, Defendants would be forced to pay the cost of doing so. However, the Court has the discretion to order one party to pay for expert testimony requested by the opposing party *only if that expert's testimony would substantially aid the Court*. *See Ledford*, 105 F.3d at 361. However, the Court finds that the issues in this case are not overly complex or scientific. *See Recommendation* [#114] at 5-8 (summarizing the allegations in the Amended Complaint [#60]). It appears that both the Court and a jury would be able to understand the issues presented by Plaintiff's case without the assistance of a court-appointed expert.

Plaintiff also seeks appointment of counsel because at least one of his proposed experts is "not willing to work with pro se litigants and is requesting to work with an attorney." *Motion* [#196] at 8. The Court does not have the power to appoint an attorney without his or her consent, *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296,

310 (1989), nor does the Court have funds available to pay an attorney who agrees to represent an indigent litigant in a civil case.  Nevertheless, the Court can seek volunteer counsel to represent a plaintiff if the Court determines in its discretion that it is appropriate to do so.  The Clerk of the Court maintains a list of pro se cases for which the Court is seeking volunteer counsel.  Placement on this list does not mean that a plaintiff will automatically receive counsel.  Rather, placement on the list results in representation being secured for the plaintiff only if an attorney <u>volunteers</u> to represent him.  Because of the number of cases on the list and the shortage of volunteer attorneys, placement on the list frequently does not result in counsel being obtained.  In such circumstances, despite placement of his case on the list, a pro se plaintiff remains responsible for litigating his case himself.

In accordance with part III.C. of the United States District Court's Pilot Program to Implement a Civil Pro Bono Panel, the Court will only seek volunteer counsel for a pro se plaintiff if consideration of the following factors so warrants: (1) the nature and complexity of the action; (2) the potential merit of the pro se party's claims; (3) the demonstrated inability of the *pro se* party to retain counsel by other means; and (4) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.  *See also Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (citing *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)) (identifying the following factors for consideration by the Court in determining whether volunteer counsel should be appointed: (1) the merits of the plaintiff's claims; (2) the nature of the factual issues raised in the claims; (3) the plaintiff's ability to present his claims himself; and (4) the complexity of the legal issues raised).  As part of the

fourth factor, the Court also considers whether there exist any special circumstances such as those in *McCarthy v. Weinberg*, 753 F.2d 836, 837 (10th Cir. 1985), where the pro se plaintiff was confined to a wheelchair, had poor eyesight, suffered from a speech impediment and memory lapses, and had general difficulty in communications.  *See Rucks*, 57 F.3d at 979.

In this case, Plaintiff has demonstrated his ability to frame facts and state claims for relief.  *See Am. Compl.* [#60].  As noted above, the legal issues presented are not overly complex, novel, or particularly difficult to state or analyze.  *See id.*  The  fact that Plaintiff's financial situation and incarcerated status have made it difficult for him to obtain representation does not, by itself, warrant the need for volunteer counsel.  Although mindful of the difficulties faced by pro se parties, courts and legislating bodies have made a distinction between civil and criminal cases regarding the necessity of counsel.  *See, e.g.*, *Mallard*, 490 U.S. at 301 (1989) ("Congress did not intend § 1915[(e] to license compulsory appointments of counsel . . . .");  *Custard v. Turner*, No. 06-cv-01036-WYD-CBS, 2008 WL 4838564, at *1 (D. Colo. Nov. 6, 2008) (noting that the court is without statutory authority to commit federal funds to "require counsel to represent" an indigent civil litigant).  Although there are extraordinary circumstances where fundamental due process concerns may demand that a plaintiff be provided with counsel, this Plaintiff's particular circumstances do not.  Plaintiff chose to bring this civil action voluntarily knowing the limitations he would face due to his financial means, lack of legal training, and incarcerated status.  To the extent that Plaintiff feels that he cannot bear the responsibility at this time, he may voluntarily dismiss his case without prejudice pursuant to Fed. R. Civ. P. 41(a).  However, while the case is pending, it remains Plaintiff's legal obligation to comply with the Federal Rules of

Civil Procedure, the Local Rules in this District, and all orders of this Court.  *See Green v.*

*Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

IT IS HEREBY **ORDERED** that the Motion [#196] is **DENIED**.


Dated:  July 11, 2014



BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge