IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02257-REB-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

ST. ANTHONY CENTRAL HOSPITAL, a corporation,
CENTURA HEALTH, a corporation,
STEPHAN M. SWAN, Physician Assistant, in his official and individual capacities,
GREGORY J. ENGLUND, Registered Nurse, in his official and individual capacities,
MARCI L. HANSUE, Registered Nurse, in her official and individual capacities,
MICHAEL O'NEILL, Police Officer for the Denver Police Department, in his official and individual capacities,
JAY LOPEZ, Police Officer for the Denver Police Department, in his official and individual capacities,
LARRY BLACK, Police Officer for the Denver Police Department, in his official and individual capacities, and
APEX, a corporation,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Order Directing the Clerk of Court to Stamp the Attached Subpoena Duces Tecum and Directing the United States Marshal to Serve the Subpoena Duces Tecum** [#201] (the "Motion"). Defendants Michael O'Neill, Jay Lopez, and Larry Black (the "Denver Defendants") filed a Response [#213] in opposition to the Motion, and Plaintiff filed a Reply [#217]. Thus, the Motion is ripe for resolution.

In the Motion, Plaintiff requests that the Court enter an Order permitting service of

twenty-five subpoenas on third parties pursuant to Fed. R. Civ. P. 45 for the purpose of obtaining numerous documents. Fed R. Civ. P. 45 governs the Court's issuance of subpoenas to compel production or inspection of documents from non-parties. A subpoena may be issued by the Court, the Clerk of Court, or an attorney as an officer of the Court for witnesses and documents found within its jurisdiction. *See* Fed. R. Civ. P. 45(a)(2), (3); *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988). Thus, a pro se litigant who is not a licensed attorney may not issue subpoenas on his own. *See United States v. Meredith*, 182 F.3d 934, at *1 (10th Cir. 1999). Here, Plaintiff has already obtained and partially completed subpoena forms and merely requests that the Clerk of Court sign the forms and that the United States Marshal then serve the completed subpoenas on the named recipients.

In the Response, the Denver Defendants argue on a variety of grounds that the Court should deny Plaintiff's request and quash the subpoenas. However, these subpoenas have not been served and the Court's ability to "quash" subpoenas before service is dubious. *See The N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (stating that under the Federal Rules of Criminal Procedure that "[a] motion to quash is not available if the subpoena has not been issued") (citing 2 Charles Alan Wright et al., Federal Practice and Procedure § 275 (4th ed. 2014)). Further, the law in this district is that a party has no standing to seek to quash a subpoena served on a third party, except as to claims of privilege or on a showing that a privacy issue is implicated. *I'mnaedaft, Ltd. v. The Intelligent Office Sys.*, No. 08-cv-01804-LTB-KLM, 2009 WL 1537975, at *4 (D. Colo. May 29, 2009); *Mona Vie, Inc. v. Amway Corp.*, No. 08-cv-02464-WDM-KLM, 2009 WL 524938, at *2 (D. Colo. Mar. 2, 2009); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997);

*Broadcort Capital Corp. v. Flagler*, 149 F.R.D. 626, 628 (D. Colo. 1993). The Denver Defendants do not argue that either privilege or their own privacy are implicated here.

Regardless, the Court has found no proscription against determining whether a subpoena should be served at all. The Court has the "inherent power to protect anyone from oppressive use of process." *Windsor*, 175 F.R.D. at 770 (citing *Gregg v. Clerk of the U.S. Dist. Court*, 160 F.R.D. 653, 654 (N.D. Fla. 1995)). A party seeking service of process by the Court must demonstrate that "he has a clear, non-discretionary right to the issuance of subpoenas." *Gregg*, 160 F.R.D. at 654. As stated in *Windsor*, 175 F.R.D. at 672,

> The Court is aware of the burden on . . . [third parties] when subpoenas duces tecum are served upon them. [As discussed below, the] Court [finds] that many of the requests for documents are inappropriate. The Court notes that . . . requests for service by the United States Marshals Service will require a determination by the Court as to relevance of requested materials and the ability of the plaintiff to pay a witness fee and mileage, if appropriate under the circumstances. Absent such a showing, the United States Marshals Service will not be directed to serve such documents.

Thus, "[t]he initial question is what information, if any, being requested [by Plaintiff from the third parties] has an impact on the allegations in the case." *Windsor*, 175 F.R.D. at 770. In other words, the Court first looks at whether the information sought by Plaintiff is relevant to his claims.

Pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant. Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g.*, *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1)

does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome"). Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted). However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *2 (D. Kan. Mar. 7, 2008) (citation omitted).

In the Amended Complaint [#60], Plaintiff in short "alleges that, after being beaten by Denver police officers, he was transported to St. Anthony Central Hospital for treatment and forcibly catheterized by police officers and hospital personnel. . . . Plaintiff claims further that defendants violated his First Amendment rights by refusing to let him speak to 'internal affairs' and/or conditioning their agreement to let him speak to 'internal affairs' on his submission to the catheterization." *Order* [#133] at 3; *see also Recommendation* [#114] at 5-8. Based on these allegations, Plaintiff's remaining claims are as follows: (1) unreasonable search and seizure in violation of the Fourth Amendment (Claim One); (2) unreasonable and excessive force in violation of the Fourth Amendment (Claim Two); (3)

negligence (Claim Three); (4) retaliation for exercise of First Amendment rights (Claim Four); (5) invasion of the right of privacy under the Fourth Amendment (Claim Five); (6) extreme and outrageous conduct (Claim Six); and (7) conspiracy to violate civil rights under the First and Fourth Amendments (Claim Seven).[1] *Order* [#133] at 19 n.9. The Court has examined each subpoena provided by Plaintiff, *see Motion* [#201] at 4-54, as well as the argument presented by Plaintiff regarding the relevance of the information he seeks in each subpoena as such information relates to these remaining causes of action. *See Reply* [#217]; *Decl. of Pl.* [#218, #219].

One subpoena is directed to Killmer, Lane, and Newman, LLP, *see Motion* [#201] at 49, and another to Rathod Mohamedbhai LLC, *see id.* at 51, both of which are local Denver law firms "that often represent plaintiffs in municipal cases." *Response* [#213] at 6. In short, these two subpoenas seek documents relating to misconduct by Denver law enforcement personnel that could be used to support a *Monell* claim against the City and County of Denver. Plaintiff argues that these documents are "extremely relevant to this action, in that, each of these firms have obtained numerous internal affairs files and other evidence, including, but not limited to, statements from citizens, prior inconsistent statements, and habit evidence against the Police Defendants in this action, that will be used to support a pervasive bias and prejudice held by the Police Defendants against citizens that file complaints against the Denver Police Department or seek to expose

---

[1] The alleged beating by Denver police officers does not form the basis of any claim in the present lawsuit.

misconduct." *Decl. of Pl.* [#218] at 10.² However, the City and County of Denver is no longer a party to this action, and Plaintiff has no *Monell* claim remaining in this lawsuit. *Order* [#133] at 8, 17. Further, "[w]hen, as is apparent here, a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000). The Court therefore finds that these two subpoenas should not be served by the United States Marshals' Service.

According to the Denver Defendants, three more subpoenas involve Plaintiff's ex-girlfriend. *Response* [#213] at 7. One subpoena is directed to HSBC Auto Finance and seeks the complete case file regarding a particular 2003 Acura RSX. *See Motion* [#201] at 45. A second subpoena is directed to Royal Automotive LLC and seeks the complete case file regarding a particular 2008 Jeep Grand Cherokee. *See id.* at 53. A third subpoena is directed to Gilbraltar Property Management. *See id.* at 11. Unlike the first two, this third subpoena specifically references Plaintiff's ex-girlfriend and seeks her eviction notice and any reports concerning housing fraud or criminal activity at her apartment complex while she was a resident there. *Id.* The subpoena also seeks access to the residence for inspection. *Id.* Regarding the vehicles, Plaintiff argues that the agencies "each have documents needed to isolate damages from separate action[s], to

---

² Parties to civil litigation often enter into agreements to limit the use of evidence obtained in the lawsuit to the immediate litigation only. Pursuant to such agreements, courts often enter Protective Orders which bar the parties from using the evidence for any purpose other than the immediate lawsuit. It is likely that the information sought by Plaintiff from the law firms would be subject to Protective Orders. Plaintiff offers no suggestion or argument about overcoming any valid Protective Orders which might exist.

ensure that [there] is no confusion or spillover effect concerning damages from separate actions." *Decl. of Pl.* [#219] at 2. Regarding the residence, Plaintiff argues that these documents are needed "to properly establish [his] privilege to this residence" because Defendants "are seeking to manufacture a defense using this alleged felonious conduct as a basis for their extraction of urine without consent, and use of force." However, Plaintiff has failed to establish the relevance of any of this requested discovery to the alleged acts of violence, negligence, and retaliation that occurred at St. Anthony's hospital on August 28, 2010. The Court is mystified as to how the vehicles, alleged facts regarding Plaintiff's former girlfriend's eviction or criminal activity at her former residence could be even remotely related to the events at issue here. Further, discovery limitations are appropriate "when it can be shown that the [discovery] is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947). In the absence of a connection to the litigation, the Court finds that these subpoenas seek information to annoy and/or embarrass Plaintiff's former girlfriend, and hence are improper. The Court therefore finds that these three subpoenas should not be served by the United States Marshals' Service.

Another subpoena is directed to North Suburban Medical Center, *Motion* [#201] at 47. As he did with HSBC Auto Finance and with Royal Automotive LLC, Plaintiff argues that North Suburban Medical Center has "documents needed to isolate damages from separate action[s], to ensure that [there] is no confusion or spill over effect concerning damages from separate actions." *Decl. of Pl.* [#219] at 2. Plaintiff also states that this entity "has medical files that [he] was not previously aware of that may need to be disclose[d] to the Defendants." *Id.* However, Plaintiff has neither explained the meaning

-7-

of nor established the relevance of "damages from separate actions." Further, the only other reason provided by Plaintiff is that certain medical files may need to be provided to Defendants. To the extent such is the case and that such medical files are not in Plaintiff's possession, Defendants may seek to obtain this information through their own discovery. *See Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2013 WL 1129429, at *8 (D. Colo. Mar. 18, 2013) (stating that "Plaintiff is [only] required to produce any documents in his 'possession, custody, or control.'" (quoting Fed. R. Civ. P. 34(a)(1))). Moreover, if Plaintiff is concerned about providing information about his past medical history in this litigation, he may provide information about his treatment at North Suburban Medical Center from memory. If he cannot remember his treatment there, he may say so. Defendants may then take additional discovery on the subject if necessary. The Court therefore finds that this subpoena should not be served by the United States Marshals' Service.

Two more subpoenas request medical information from the University of Colorado Health and Science Urology Department, *see Motion* [#201] at 5, and the Denver Health Medical Center, *see id.* at 23. Plaintiff states that the former "has medical reports and research that will [be] needed to establish the legitimacy of catheterization as a medical procedure to obtain information concerning a person[']s toxicity or other [ailments]." *Decl. of Pl.* [#218] at 13. He also states that "the discovery of other peer reviews and reports will disclose any other reports of medical catheterization of combative patients, which, is needed to support that this conduct was seriously egregious and deviates from [society's] norms." *Id.* He makes a similar statement regarding his requests to Denver Health Medical Center, except that he adds that he believes that some of the medical defendants may have been employed there and that records of complaints of misconduct may provide

impeachment evidence. *Id.* at 13; [#219] at 2. However, there are no allegations in the Amended Complaint [#60] regarding these entities, and there is no suggestion here that either has any information relating to the facts of Plaintiff's present case regarding the events of August 28, 2010 at St. Anthony's Hospital. *See Munoz*, 221 F.3d at 1169 (proscribing fishing expeditions seeking unidentified misconduct). To the extent that Plaintiff is interested in obtaining information and/or opinions to present to the trier of fact about (1) the effects of catheterization on "combative" patients and/or (2) whether catheterization can be used to establish a person's "toxicity," physical condition or the presence of illness, the proper procedure for obtaining such information is not to subpoena confidential medical records and other data from non-parties. The Federal Rules of Civil Procedure and the Federal Rules of Evidence permit cross-examination of physicians whose testimony is offered by Defendants in this regard, and further permit Plaintiff to obtain and offer his own expert's testimony in this regard. *See, e.g.,* Fed. R. Civ. P. 26(a)(2); Fed. R. Evid. 702. The Court therefore finds that these two subpoenas should not be served by the United States Marshals' Service.

Plaintiff also requests documents relating to his own underlying criminal charges and convictions from the following entities: Denver Public Defender's Office, *see Motion* [#201] at 13, Denver District Attorney's Office, *id.* at 15, Colorado Bureau of Investigation, *id.* at 17, Sprint Telecommunications, *id.* at 21, James Albee ("Albee") of the Metro Intelligence Agency, *id.* at 25, Denver Police Department, *id.* at 27, Denver City Attorney's Office, *id.* at 29, the law firm of Faegre Baker Daniels LLP *id.* at 31, Jefferson County Probation Office for the First Judicial District, *id.* at 33, Jefferson County District Court, *id.* at 35, Jefferson County Public Defender's Office, *id.* at 37, Arvada Police Department, *id.* at 39, Jefferson

County District Attorney's Office, *id.* at 41, and Denver District Court, *id.* at 43. From Sprint Telecommunications, Plaintiff seeks in part any records of pin traces requested by the Denver Police Department in its attempt to locate and arrest Plaintiff. *Id.* at 21. According to the Denver Defendants, Mr. Albee of the Metro Intelligence Agency "was Plaintiff's court-appointed investigator in over 36 of Plaintiff's criminal cases." *Response* [#213] at 5. Plaintiff seeks Mr. Albee's files in connection with some of these cases. *Motion* [#201] at 25. From Faegre Baker Daniels, LLP, Plaintiff seeks a deposition transcript and other documents relating to one of his underlying criminal cases. *Id.* at 31. From the remaining entities, Plaintiff generally seeks all legal and investigatory files relating to the criminal charges brought against him over the course of many years in several judicial districts. *Id.* at 13, 15, 17, 27, 29, 33, 35, 37, 39, 41, 43. Plaintiff states that the information is for the purpose of establishing unconstitutional conduct by various persons who are not part of this lawsuit and regarding events that are not related to this lawsuit. *See, e.g.*, *Decl. of Pl.* [#218] at 8. He also states that he expects opposing counsel will attempt to impeach him at trial using his past criminal record, and he asserts that obtaining these records will help him combat such impeachment. *See, e.g., id.* at 1. However, Plaintiff does not connect his requests from any of these entities to any of the causes of action remaining in this lawsuit. "Although pretrial discovery is broad, it is not limitless, and discovery should not be allowed where the resulting benefit would be negligible." *Garcia v. Berkshire Life Ins. Co. of Am.*, No. 04-cv-01619-LTB-BNB, 2007 WL 3407376, at *3 (D. Colo. Nov. 13, 2007) (internal quotation marks omitted). The Court therefore finds that these fourteen subpoenas should not be served by the United States Marshals' Service.

Plaintiff also uses one subpoena to request records jointly from the Denver Detention Center and from the Denver Sheriff's Department. *See Motion* [#201] at 19. Plaintiff seeks his "complete administrative, detainee, intake screening/booking, and medical and mental health file from 2006 to 2012, including all notes, pleadings, emails, and correspondence with law enforcement and the District Attorney's office." *Id.* To the extent that Plaintiff seeks his medical records from both before and after the incident, they may be relevant to this action. *See Carbajal*, 2013 WL 1129429, at *4 ("Plaintiff has put his physical health at issue, making his physical health records relevant. . . . Because Plaintiff may have had preexisting conditions and/or been treated for his alleged injuries beyond his initial treatments at St. Anthony's Central Hospital on August 28, 2010 . . . , the Court finds that more than [that day's] worth of records are relevant."). However, to the extent he seeks any other records, he has failed to explain the relevance of those records to the causes of action remaining in this lawsuit. Moreover, service of a single subpoena seeking records from more than one entity is inefficient. Thus, the Court will allow revised versions of this subpoena to be served by the United States Marshals' Service. One revised subpoena shall be served on the Denver Detention Center and another revised subpoena shall be served on the Denver Sheriff's Department. Both shall request copies of Plaintiff's medical records from 2006 to 2012, if any, in the possession of the named entity. Copies of the revised subpoenas are attached as Exhibits A and B.

Plaintiff also requests records from the Department of Regulatory Agencies ("DORA"), *see Motion* [#201] at 7, and from Denver Health Ambulance or Paramedic Division and Denver Health Medical Center, *id.* at 9. From the former, Plaintiff requests the

complete file kept by DORA regarding the complaint he made about his catheterization and any investigation the agency conducted thereafter. He also requests many other documents, including case files of other persons who claim they were catheterized without their consent. To the extent that Plaintiff seeks the case file regarding his own complaint to the agency, the Court finds that this may be relevant. However, all other documents requested by Plaintiff are simply irrelevant to his causes of action. Thus, the Court will allow a revised version of this subpoena to be served by the United States Marshals' Service. The subpoena shall request from DORA copies of all records relating to Plaintiff's complaint about catheterization, including investigative records, if any. A copy of the revised subpoena is attached as Exhibit C. Regarding Denver Health Ambulance or Paramedic Division and Denver Health Medical Center, Plaintiff merely requests "the dispatch and complete incident report for the pickup and transportation" of Plaintiff in connection with this incident. The Court finds that this information may be relevant to Plaintiff's claims, and thus the Court will allow revised versions of this subpoena to be served by the United States Marshals' Service. Copies of the revised subpoenas are attached as Exhibits D and E.

On many of the subpoenas provided by Plaintiff, he asserts that an electronic copy of these documents may be produced to him in lieu of hard copies. Given Plaintiff's incarcerated status, the revised subpoenas shall require production to him by mail of either hard copies or electronic copies of the documents on a compact disc.[3] Accordingly,

---

[3] Nothing in this Order shall be construed as preventing any entity served with a subpoena from asserting any objection to compliance.

IT IS HEREBY **ORDERED** that the Motion [#201] is **GRANTED in part**, as outlined above.

Dated: July 30, 2014

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge