**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02257-REB-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

MICHAEL O'NIELL, Police Officer for the Denver Police Department, in his individual capacity,
JAY LOPEZ, Police Officer for the Denver Police Department, in his individual capacity,
LARRY BLACK, Police Officer for the Denver Police Department, in his individual capacity,

    Defendants.

---

**ORDER RE: DEFENDANTS' MOTION
SEEKING ATTORNEY FEES AND COSTS**

---

**Blackburn, J.**

The matter before me is **Defendants' Motion Seeking Attorney fees and Costs** [#391],[1] filed September 1, 2015, as supplemented by defendants' **Supplemental Brief in Support of Defendants' Motion Seeking Attorney Fees and Costs** [#399], filed September 30, 2015. (*See* **Order for Supplemental Briefing** [#392], filed September 10, 2015.) I deny the motion for costs as moot[2] and grant the motion for attorney fees in part.

---

[1] "[#391]" is an example of the convention I continue to use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Costs, other than an award of attorney fees as a part of costs under 42 U.S.C. § 1988(b), have already been awarded by the clerk of the court as provided by 28 U.S.C. § 1920, FED. R. CIV. P. 54(d)(1), and D.C.COLO.LCivR 54.1. (*See* **Bill of Costs** [#395], filed September 24, 2015.

## I. JURISDICTION

I have jurisdiction over the parties to and subject matter of this action. My jurisdiction arises under 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

The generally applicable "American Rule" provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *see also Federal Trade Commission v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). Nevertheless, Congress has provided limited exceptions to this rule "under selected statutes granting or protecting various federal rights." *Alyeska Pipeline Service Co.*, 95 S.Ct. at 1623. In cases brought to enforce civil rights under, *inter alia*, 42 U.S.C. § 1983, attorney fees are available to a prevailing party (other than the United States) as part of costs and in the court's discretion. 42 U.S.C. § 1988(b).

Because "[t]he purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances . . . a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103, S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *see also Fox v. Vice*, 563 U.S. 826, –, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, . . . he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.") (citation and internal quotation marks omitted). On the other hand, due to the "quite different equitable considerations at stake," the court is more

circumscribed in awarding attorney fees to a prevailing defendant. **Fox**, 131 S.Ct. at 2213 (citation and internal quotation marks omitted). In that circumstance, attorney fees may be awarded only if the court finds that "the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." **Mitchell v. City of Moore, Oklahoma**, 218 F.3d 1190, 1203 (10th Cir. 2000) (citations and internal quotation marks omitted).

"A frivolous suit is one 'based on an indisputably meritless legal theory, . . . [or] whose factual contentions are clearly baseless.'" **Id.** at 919 (10th Cir. Feb. 26, 2010) (quoting **Neitzke v. Williams**, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)). **See also Dill v. City of Edmond, Oklahoma**, 1998 WL 740962 at *2 (10th Cir. Oct. 23, 1998) (suit frivolous if claims "not warranted in fact or law"). It may include both claims that were meritless at the inception of the case and those that only were revealed to be meritless as the litigation developed. **Thorpe v. Ancell**, 367 Fed. Appx. 914, 919 (10th Cir. Feb. 26, 2010). Although a finding of bad faith is not necessary in order to support an award of attorney fees to a prevailing defendant, a finding of bad faith can bolster a defendant's request for such an award. **See Christiansburg Garment Co. v. EEOC**, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); **Anthony v. Baker**, 767 F.2d 657, 667 (10th Cir. 1985).

"IIn applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." **Christiansburg Garment Co.**, 98 S.Ct. at 700. Nevertheless, where "[t]he plaintiff acted wrongly in leveling [frivolous] allegations, . . . the court may

shift to him the reasonable costs that those claims imposed on his adversary." **Fox**, 131 S.Ct. at 2214.  The assessment of attorney fees to a prevailing defendant in appropriate circumstances not only compensates the misused adversary, but also deters the filing of future meritless suits, both by the plaintiff in the case at hand and by future litigants who may be similarly situated or inclined.  **See Thorpe**, 367 Fed. Appx. at 924.

### III.  ANALYSIS

This lawsuit arose out of events that allegedly transpired at St. Anthony's Central Hospital in Denver, where plaintiff Dean Carbajal was transported following his arrest on several warrants on the night of August 28, 2010.  Mr. Carbajal alleged that medical personnel at the hospital, at the direction of defendant Detective Larry Black, forcibly catheterized him while Detectives Black, Jay Lopez, and Michael O'Neill[3] physically and violently restrained him.

Mr. Carbajal initially sued fourteen defendants on six separate theories, many of which were further divided into two or more subparts.  The majority of these claims against the majority of defendants were dismissed either at the pleading stage or on motions for summary judgment.  A single claim of excessive force against Detectives Black, Lopez, and O'Neill remained for trial.  That claim was tried to a jury on August 10 to 18, 2015.  The jury quickly returned a verdict in favor of all three defendants in all particulars.  At the conclusion of the proceedings, and in connection with the entry of judgment, I invited defendants to file the instant motions seeking attorney fees related solely to the trial of this case.  I took this extraordinary step in light of the extraordinary

---

[3]  Misnamed in the caption as "Michael O'Niell."

nature of the proceedings over which I had just presided, as will be detailed more thoroughly below. The instant motion was submitted in response to that invitation.

Even though I rejected defendants' unexcused belated pretrial attempt to move for summary judgment on Mr. Carbajal's claim of excessive force against them (*see* **Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** at 2-4 & nn. 3 & 4 [#334], filed June 23, 2015), that claim would not have been appropriate for summary judgment in any event. Ultimately its resolution required a credibility determination – specifically, whether Mr. Carbajal's version of the events which transpired at the hospital that evening was credible. Having now heard Mr. Carbajal's testimony first-hand, I am unequivocally convinced that his testimony was not merely wholly *in*credible but bordered on perjurious.

It was clear to this court as Mr. Carbajal began recounting his story that he was attempting to manufacture factitiously a state of high emotion in order to improperly influence the jury, becoming increasingly (but disingenuously) distraught as he told the jury that defendants choked him to the point of unconsciousness and struck him in the testicles with such force that he wondered whether something had ruptured. As Mr. Carbajal's histrionics reached a crescendo, to the extent he appeared to be sobbing and gasping for breath, I was forced to halt the proceedings for the day, ostensibly to allow Mr. Carbajal to "compose" himself and to prevent him from improperly influencing the jury. After excusing the jury, I committed to the record my observations that despite the fevered tenor of Mr. Carbajal's testimony that afternoon, he had not shed a single actual tear during the entirety of his performance. Mr. Carbajal engaged in similar fictitiously

overwrought behavior during his closing arguments as well.

Aside from being suspect in its own right, Mr. Carbajal's testimony also was contrary to every piece of documentary evidence submitted at trial as well as to the testimony of every other witness who took the stand. For one thing, there was not a shred of evidence to suggest that Mr. Carbajal was catheterized forcibly. Both the physicians assistant and the nurse who performed the procedure testified that Mr. Carbajal was catheterized without objection, complaint, or difficulty. More to the point, however, the evidence plainly showed that none of the three defendants was even present during the procedure, much less inflicted the type of aggravated abuse on Mr. Carbajal that he claimed to have suffered.[4] Neither the medical personnel from St. Anthony's nor the nurse who examined Mr. Carbajal at the Denver Detention Center following his release from the hospital noted or charted any injuries to Mr. Carbajal's neck or recall him complaining of having been choked or struck in the testicles. Given Mr. Carbajal's acknowledged litigiousness, both in general[5] and in this particular lawsuit specifically, his suggestion that he did not report these injuries or otherwise seek medical attention for them because he does not like to complain rings exceptionally hollow.

Mr. Carbajal's reiterated belief that the lack of evidence to support his version of

---

[4] Indeed, it became readily apparent during the course of the proceedings that Detective Lopez was not present at the hospital at any point during the fateful night of August 28, 2010, and that Mr. Carbajal apparently had confused him with another officer. Defendants informed Mr. Carbajal of this fact repeatedly and well prior to trial, but he nonetheless refused vindictively to dismiss his claims against Detective Lopez.

[5] Mr. Carbajal testified that prosecuting lawsuits on his own behalf consumes 10 to 15 hours a day of his time. Litigation – perhaps better described as barratry – has become his raison d' etre.

6

events was due to a grand (but not fully articulated or explicated) conspiracy involving the police, medical personnel, and members of the defense team was nothing short of pure fantasy. Every witness who took the stand and refuted his story was accused argumentatively by Mr. Carbajal of lying under oath. In addition, he repeatedly and spuriously accused defense counsel of engaging in various types of nefarious conduct in an effort to thwart him (a charge which he repeats in response to the instant motion) without a shred of actual evidence to support his slanderous allegations.

Having lived through this trial, it is plain to this court that Mr. Carbajal manufactured this lawsuit almost entirely out of whole cloth, doggedly determined to press his factually baseless claims without any regard for the truth. Indeed, this lawsuit appears to this court to have been little more than a spurious, vindictive, retributive, and disturbing campaign of vengeful character assassination against these three officers. In other words, the record is plain not only that the claims lacked any merit whatsoever, but moreover that Mr. Carbajal prosecuted this suit in the utmost bad faith. This suit was vexatious, frivolous, and brought to both harass and embarrass the defendants.

I thus find and conclude that this case not only warrants but demands an award of attorney fees on defendants' behalf, both to compensate them for the loss of time and dignity involved in being caught up in Mr. Carbajal's web of lies and half-truths and to deter the filing of future utterly baseless and fantastical claims, not only by Mr. Carbajal himself (a goal I frankly think unlikely to be achieved in the absence of restrictions on Mr. Carbajal's ability to file pro se lawsuits) but also by other litigants who might be tempted to follow his lead. In this case it is eminently reasonable to shift to Mr. Carbajal

the reasonable costs that his baseless claims imposed on his adversaries. Having so concluded, I turn to consider the amount of an appropriate award of attorney fees as a part of costs under 42 U.S.C. § 1988(b).

The starting point for any calculation of reasonable attorney fees is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. **Hensley v. Eckerhart**, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); **Malloy v. Monahan**, 73 F.3d 1012, 1017-18 (10th Cir. 1996).  There is a strong presumption that the lodestar fee represents a reasonable fee for purposes of fee-shifting statutes. **Homeward Bound, Inc. v. Hissom Memorial Center**, 963 F.2d 1352, 1355 (10th Cir. 1992).[6]

Defendants in this case were represented by Senior Assistant City Attorney David C. Cooperstein, Assistant City Attorney Jamesy C. Owen, Assistant City Attorney Steven W. Martyn, and paralegal Cassandra Sudbeck.  The qualifications of these professionals are set forth in their affidavits, appended to the motion, and are incorporated by reference.  Mr. Cooperstein's hourly rate is $215, Ms. Owen and Mr. Martyn bill at rates of $160 and $150 an hour, respectively, and Ms. Sudbeck's time is billed at a rate of $85 an hour.  Defendants' affidavits and the court's own knowledge of fees typically charged in cases of this type in this area substantiate that these rates are slightly lower than rates typically charged by other lawyers and paralegals of similar skill and experience in the Denver metropolitan market.  **See Ramos v. Lamm**, 713 F.2d

---

[6] Mr. Carbajal has offered neither argument nor evidence contesting either the number of hours expended by defense counsel in connection with the trial or this matter or the hourly rates requested.

546, 555 (10th Cir. 1983). I therefore approve the requested hourly rates for each member of the defense team.

I thus turn to consider the number of hours reasonably expended in connection with the trial of this case. In requesting reimbursement for attorney fees, defense counsel must exercise the same "billing judgment" as would be proper in setting fees for a paying client. **Hensley**, 103 S.Ct. at 1941; **Malloy**, 73 F.3d at 1018. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." **Hensley**, 103 S.Ct. at 1940 (citation and internal quotation marks omitted; emphases in original). Counsel therefore must make a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." *Id*. at 1939-40.

In total, the defense team spent 698.30 hours in connection with preparation for and prosecution of the trial of this case: 237.10 hours by Mr. Cooperstein; 323.20 hours by Ms. Owens; 28.5 hours by Mr. Martyn; and 109.50 hours by Ms. Sudbeck. Defendants' request for reimbursement attributable to Ms. Owens's work has been reduced by 25 percent given that this was her first trial in a case of this type, which understandably may have created some inefficiencies. While the court appreciates counsels' efforts to exercise billing judgment in connection with their request for attorney fees, it still appears to this court that the hours requested are moderately excessive.

More particularly, I perceive some not inconsequential duplication of effort on the part of Mr. Cooperstein and Ms. Owens. **See Hensley**, 103 S.Ct. at 1039-40. Although certainly it makes sense for a more senior attorney to supervise the work of a junior

9

colleague, many of the entries for similar or identical tasks show that Mr. Cooperstein spent nearly as much time on these tasks as did Ms. Owens.[7] The records also reveal a certain amount of Mr. Cooperstein's time spent in matters that were largely clerical and thus could have been delegated to a junior attorney or even a paralegal. **See Missouri v. Jenkins by Agyei**, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 2471 n.10, 105 L.Ed.2d 229 (1989). Likewise, at least three hours of Mr. Martyn's time are attributable to simply gathering past pleadings from and preparing a list of Mr. Carbajal's prior lawsuits against the City, work which could have been performed by a competent paralegal billing at a little more than half the rate of a junior attorney.

Where an attorney has failed to exercise billing judgment, the court may do so for him by striking problematic entries or by reducing the hours requested by a percentage intended to substitute for the exercise of billing judgment. **See Harper v. City of Chicago Heights**, 223 F.3d 593, 605 (7th Cir. 2000), **cert. denied**, 121 S.Ct. 883 (2001), **and cert. denied**, 121 S.Ct. 1092 (2001); **Walker v. United States Department of Housing and Urban Development**, 99 F.3d 761, 770 (5th Cir. 1996). In this case, I find it most appropriate to impose a percentage reduction on the total amount of fees requested. I therefore will decrease the requested total attorney fee award of $103,343 by an additional 20 percent ($20,669), resulting in a total fee award of $82,674. Neither

---

[7] For instance, both attorneys expended many hours in the review of documentary evidence and preparation of trial exhibits. Indisputably, there was a substantial amount of documentary evidence in this case, and the court does not fault counsel for being thorough, especially given Mr. Carbajal's propensity to challenge the documents as fabricated, withheld in discovery, or otherwise infirm. Nevertheless, the sheer amount of time expended by two attorneys – one a senior attorney – on these tasks still gives the court pause.

party having suggested that any further adjustments to the lodestar are appropriate, I find this amount reasonable and adequate to compensate defense counsel for their preparation for and representation at trial in this matter.  See **Pennsylvania v. Delaware Valley Citizens Council for Clean Air**, 478 U.S. 546, 564-65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (adjustments to lodestar should be made only in rare and exceptional cases).

## IV.  ORDERS

Section 1983 provides an important safeguard against abuses of government officials.  This case demonstrates what can happen when the laudable goals of the statute are turned on their head and used as a cudgel to bully, intimidate, and defame otherwise good and decent police officers.  Blinded by whatever psychological cataract prevents him from perceiving reality no matter how pellucidly presented to him, Mr. Carbajal has perverted our system of justice in this iteration of his campaign against the City of Denver and its police officers.  The imposition of costs in the form of attorney fees is the least this court can do at this juncture to attempt to reign in his egregious excesses.  To the extent applicable, the court also finds that this case should count as a strike against Mr. Carbajal for purposes of 28 U.S.C. § 1915(g).

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion Seeking Attorney fees and Costs** [#391], filed September 1, 2015, is granted in part and denied as moot in part as follows:

   a. That the motion is granted with respect to defendants' request for attorney fees as a part of costs under 28 U.S.C. § 1988(b); and

      b.  That the motion is denied as moot with respect to defendants' request for additional costs under 28 U.S.C. § 1920;

  2.  That defendants are awarded reasonable attorney fees of $82,674 pursuant to 42 U.S.C. § 1988(b); and

  3.  That to the extent applicable, this case shall count as a strike against Mr. Carbajal for purposes of 28 U.S.C. § 1915(g).

Dated October 26, 2015, at Denver, Colorado.

                              **BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge